## J. D. Manley v. The State.

### No. 1192.    Decided May 17, 1911.

**1.—Murder—Change of Venue—Statutes Construed—Contest.**

Where, upon trial of murder, defendant made application for change of venue under section 133 of chapter 104 of the Act of the Twenty-Ninth Legislature, stating that he was a member of the military forces of this State and of the National Guard; that he was indicted for murder and that the alleged offense was committed while he was performing a military duty required of him under said Act; that there existed so great a prejudice against him in the county of the prosecution that he could not obtain a fair and impartial trial, etc., which application was supported by the affidavit of two credible persons, a change of venue should have been granted, and a contest over the means of knowledge of compurgators of said application was not authorized under said Act.

**2.—Same—Continuance.**

Where the cause was reversed upon other grounds it became unnecessary to pass on defendant's application for continuance.

**3.—Same—Indictment—Precedent.**

Where the indictment for murder was according to approved precedent, there was no error in overruling a motion to quash.

**4.—Same—Jurisdiction—Civil Authorities.**

Under the military Act of the Twenty-Ninth Legislature, officers and soldiers accused of crime, etc., against the person or property of any citizen of the State are to be tried by the civil courts.

**5.—Same—Evidence—Validity of Order—Calling Out National Guard.**

Where, upon trial of murder, the evidence showed that the defendant was a member of the National Guard and on military duty under orders of his superiors at the time the alleged offense was committed, and that he was carrying out the orders of his superiors in enclosing and guarding a portion of the public street of a city during a public demonstration receiving the President of the United States, it was error to admit testimony questioning the validity of the order calling out said National Guard, and the mayor's right to order the closing of said public street, as defendant was required under the law to obey the orders of his superior officers, and it was not shown that he was in possession of any facts that would put him on inquiry.

**6.—Same—Argument of Counsel—Reading Law to Court—Pageant.**

Upon trial of murder, where the evidence showed that the defendant was a member of the National Guard on military duty under the orders of his superior officers to maintain order during a public pageant in a city when the alleged offense was committed, it was error to permit the State's counsel to read to the court and jury an excerpt from a decision of the court in a civil case, governing the rights of pedestrians and others on public streets.

**7.—Same—Evidence—Dying Declarations—Opinion of Witness.**

Upon trial of murder it was error to admit that part of the written dying declarations of the deceased to the effect that the defendant stabbed him without any word or act of the deceased that could be regarded as hostile or a provocation.

**8.—Same—Evidence—General Reputation for Truth and Peace.**

Upon trial of murder the court should not have limited testimony supporting the general reputation of defendant for truth and peace, the State not having admitted defendant's said reputation.

**9.—Same—Evidence—Military Orders—Officers and Soldiers.**

Upon trial of murder, where the evidence showed that the defendant was a member of the National State Guard at the time of the alleged offense, guarding a certain portion of a closed street in a city, under orders of superior officers, there was no error in not admitting testimony of such superior officer to the effect that he had instructed the defendant to keep the people out of said enclosure at all hazards, as this would not authorize defendant to take human life.

**10.—Same—Duties of National Guard—Army Regulation.**

The duties of the National Guard are defined in the military Act of the Twenty-Ninth Legislature, and upon trial of murder, where the evidence showed that the defendant was a member of the National Guard at the time of the alleged offense, there was no error in not permitting the United States Army Regulations to be introduced in evidence.

**11.—Same—Evidence—National Guard.**

Upon trial of murder, where the evidence showed that the defendant was a member of the National Guard in the discharge of his duty under orders of his superior, there was no error in not admitting testimony that the State militia is a part of the United States soldiery, as this was not material to any issue in this case.

**12.—Same—Military Duty—Militiamen.**

In times of peace a militiaman has no more right to take human life than any other officer or citizen, nor is he deprived of any right of any other officer or citizen under the Constitution and laws of this State.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Robert B. Seay.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*Walker & Williams* and *Muse & Allen,* for appellant, filed an able brief in which they cited the authorities in the opinion.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—In this case appellant was charged with murder, and upon a trial he was convicted of murder in the first degree, and his punishment assessed at imprisonment for life.

This is the case in which appellant, a member of the Texas National Guard, killed Louis Reichenstein at Dallas on the occasion of the visit of President Taft in October, 1909. On the occasion of this visit at the request of the Secret Service men of the United States, Mayor Hay, of Dallas, issued a call for the company of which appellant was a member to do guard duty. It appears from the record that some days before the day of the visit of the President the officers of the company informed the members that they expected a call to do guard duty on that occasion, and for all members of the company to report at the armory at a given hour on that day. If the call was received they would notify the members what duty was expected of each of them, and if no call was received they would so notify them at that hour. Members of the company at the hour stated assembled at the armory, and at this time were informed that the call had been received, and the members of the company were assigned to their duties in accordance with a plan agreed on between the officers, the Secret Service men accompanying the President, and the mayor of the city of Dallas. A detachment, of which appellant was a member, was assigned the duty of fencing off with wire a portion of Kentucky Street and Parry Avenue (in front of the Exposition grounds), this being the place where the President's train was expected to arrive and the President alight from the train. These members of the Guard were instructed to exclude all persons from the grounds so fenced off. After the grounds had been fenced off and all persons excluded, deceased approached and desired to pass through the fenced-off grounds, giving as a reason a desire to catch a street car. Appellant was stationed at or near the point where deceased approached, and refused permission. This much may be admitted as correct, from all the testimony. What took place at and subsequent to this time will be treated later on in

discussing the different grounds of the motion for a new trial. This is enough to give a general idea of the case.

1. Upon the call of the docket appellant presented an application, praying for a change of venue in the case, and as this involves the proper construction to be placed on section 133 of chapter 104 of the Acts of the Twenty-ninth Legislature, we here set out said section, as follows:

"Any officer or member of the military forces of this State who is indicted or sued for any injury to persons or property done while performing or endeavoring to perform any duty required of him by this Act, shall have the right, and it is hereby made the duty of the court in which such indictment or suit is pending, upon the application of the person so indicted or sued, to remove the venue of such cause to some court of competent jurisdiction in another county not subject to the same or some other disqualification; provided, such application is supported by the affidavit of two credible persons to the effect that they have good reason to believe that the defendant can not have a fair and impartial trial before such court."

As before stated, appellant filed a motion for a change of venue under this provision of the Act, stating that he was a member of the military forces of this State and of the National Guard, and that he was indicted for the murder of Louis Reichenstein, and that the alleged offense was committed while he was performing and endeavoring to perform a duty required of him under the Acts of the Twenty-ninth Legislature, and that there existed in Dallas County, Texas, so great a prejudice against him that he could not obtain a fair and impartial trial in Dallas County, praying that the venue be changed to some court of competent jurisdiction in another county not subject to the same disqualifications. Appellant signed and swore to this applica-. tion, and F. A. Logan, E. H. Roach, H. W. Kinnard, E. S. Eberly and S. E. Moss all supported said application by an affidavit attached to the application in accordance with the provisions of law.

The county attorney filed a contesting affidavit in which he alleged that he did not attack the credibility of the compurgators, but only their means of knowledge.

If the county attorney had alleged that the compurgators were not credible persons, or that appellant was not a member of the National Guard, or that the company of which he was a member had not been called, and the company nor appellant were not at the time engaged in the discharge of duties as members of the Guard, there would have been an issue to try. But as stated hereinbefore, the company had been called out as the whole record discloses, and duties assigned to members of the company, and appellant and other members of the company were then engaged in guarding grounds upon which the President was expected to disembark from the train, and in our opinion the change of venue should have been granted.

If it was intended that the allegations that appellant could not get

a fair and impartial trial could be contested, it would have been non-sensical to have adopted this provision of the Act. We already had on our statutes a provision where a man can obtain a change of venue upon an application alleging that he could not get a fair and impartial trial, supported by necessary compurgators. But this other Act provides that such application may be contested, and a hearing had on the application. There is no such provision contained in the Act of the Twenty-ninth Legislature. There is no provision for a contest when application is filed in compliance with its provisions, but it is provided that such application shall be granted upon the filing of a sufficient application, supported by the affidavit of two credible persons. With the wisdom of the adoption of this or any provision of the National Guard Act, this court has nothing to do. This is confided to the legislative branch of the government, and when they act within the scope of their authority we have nothing to do but to construe and give force to the laws they enact. We are not passing on the question of whether under the evidence the court was authorized to find that appellant could or could not get a fair and impartial trial in Dallas County, Texas, as under this special statute we do not think such issue can be raised, and so deciding, we think the change of venue should have been granted.

2. Inasmuch as we found that the court should have granted the change of venue, we do not deem it necessary to pass on the application for a continuance filed herein.

3. In accordance with the decisions of this court, the court did not err in overruling the motion to quash the indictment. Neither did the court err in overruling the plea to the jurisdiction of the Criminal District Court of Dallas County, Texas. Article 30 of section 103 of the Military Act specially provides that when any officer or soldier is accused of a capital crime, or of any offense against the person or property of any citizen of this State (except in time of war) he shall be turned over to the civil authorities for trial.

4. In bill of exceptions No. 4 appellant complains of the action of the court in admitting certain testimony of Mayor Hay in which the validity of the order calling out the National Guard was questioned, and in which was questioned the mayor's right to consent to or order closed that portion of Parry Avenue and Kentucky Street fenced off on that occasion. Under the military statute, one who enlists in the National Guard is required to take an oath to obey the orders of his superior officers (section 103, chapter 104, Acts 29th Leg.). Under it and other provisions of the Act appellant was required to obey the orders of his superior officers. It is not shown that he had any knowledge of who issued the order, but he, with other members of the company, were informed that a call had been received by their commending officer in which he was instructed to take his company and perform guard duty on this occasion. Appellant could not question the

validity of this order, and it was improper to permit this issue to be made in the case, and this testimony should have been excluded.

Under article 76, under given conditions, the mayor of a city may call out the National Guard for active duty, and a member of the Guard, when his commanding officer notifies him he has received a call, is required to obey the call. It may be that under the facts of this case the mayor should not have issued the call (upon which issue we do not rule, as it is not necessary), but if the call was illegal the appellant was not so informed, and in possession of no facts that would put him upon inquiry, if he was permitted to inquire, and if any person is to suffer by reason of an illegal call it seems that it should be the person who issued it.

Again, if the call was not legally issued, or no one authorized had given permission to close the streets, appellant did not know that fact, and as he was instructed to rope off certain grounds and keep it clear of intruders by those the law had placed in command of him when under call, the validity of such order should not have been permitted to be questioned, and the evidence tending to show that no proper authority had granted permission or given an order to rope off and clear the ground. This, when called and ordered so to do, appellant under his oath and the provisions of the Military Act was required to perform, for if he refused he, under the law, would be held for trial by a court martial. If under the call there was no authority to fence and clear the street and prevent public travel, the official and those in command who ordered and required the members of the company to perform these acts should be held amenable, and the facts not introduced in evidence against this appellant to aggravate his offense or incline the jury to inflict more severe punishment by infusing in their minds the impression that the acts of appellant in obeying the call and in fencing the streets were wrong, and appellant being thus in the wrong, even though his contention of how the unfortunate killing occurred should be believed, yet as he was engaged in an illegal act in doing guard duty and in fencing the street, and in attempting to keep the space clear of intrusion, he should be punished severely, because by such acts he had brought on the occasion.

As emphasizing the errors above pointed out, counsel for the State in the closing argument to the jury was permitted to read to the jury the following excerpt from a decision of the court in a civil case:

"The rule stated and illustrated by these cases is a corollary to the principle that a highway is designed, primarily, for the use of travelers on foot or otherwise, and that whenever it is used for a different purpose, if such use is calculated or is liable to injure another who is lawfully using it for the purpose for which it was dedicated and designed, or any other purpose, in the lawful pursuit of his business, the person diverting it to such other use is guilty of negligence, and liable for such injuries as are proximately caused therefrom. Though streets are sometimes used for purposes of advertising, they were never

intended or designed for such purposes, and when so used by anyone he is, if not absolutely liable for any injury that may be caused by such uses, at least liable for any damage that might be reasonably anticipated to flow from it. The public can no more be deprived of its right to the free and unincumbered use of its thoroughfares by the flaunting of banners, the flapping of gaudy caparisons, the display of pyrotechnics, the blare of trumpets, the spirit-stirring drum, the ear-piercing fife and all quality that gladdens the eye, quickens the step and thrills the soul of the small boy, than the people can be of their liberties by the gleaming of scepters, crowns and crescents, or by lawless acts of the Secret Service men who go before a President in his triumphal peregrinations through a great republic."

To which action the defendant objected on the ground that the same was misleading and prejudicial, and had no application to any issue involved in this cause, and was calculated to injure and prejudice the rights of the defendant and create the impression that he was unlawfully guarding said enclosure and unlawfully obstructing the thoroughfare in Parry Avenue so enclosed by the wire, and which was sought to be used by the deceased in getting under and through the enclosure in said Parry Avenue at the time of the homicide.

State's counsel should not have been permitted to read this decision to the jury, in the light of the testimony questioning the validity of the call for the military, and questioning the legality of the closing of the street. These were circumstances that should not have been permitted in evidence to be considered as evidence of defendant's guilt or innocence, and while the special charge as requested in regard to this matter should not have been given as drawn, yet so much thereof as indicated that the enclosure wired off and guarded was not to be taken as a circumstance against defendant; nor the fact that he was there as a soldier, and had his gun with a bayonet thereon, should not be considered as a circumstance against him, but on the other hand he was properly at the place and had the right to have the gun and bayonet; and that they should not consider the opinion read to them as the law of this case should have been given in charge to the jury.

5. Appellant objected to the admissibility of the following statement of deceased: "St. Paul Sanitarium, Dallas, Texas, October 23, 1909. I, Louis Reichenstein, now realizing that I am probably at the point of death, declare that I was stabbed by one of the soldiers at the Fair Grounds today, and without any word or act of my own that could be regarded as hostile or a provocation. I asked the soldier to permit me to cross the line to catch a car, and he refused me and struck me across the right shoulder with his gun. I made the remark to him then, 'Wasn't that a nice thing to do?' and thereupon, without any word or warning, he ran his bayonet right through me.

(Signed) "L. Reichenstein."

We think the testimony sufficiently shows that deceased at the time

knew he was at the point of death to render the statement admissible, but that part of said statement, "that could be regarded as hostile or a provocation" should have been stricken out, because it was but an opinion or conclusion of the dying man. What he said and did on that occasion could be introduced in evidence, but the deductions should be left to be drawn by the jury.

6. Appellant complains that the court, after hearing some witnesses testify that his reputation for truth and veracity was good, and that he bore the reputation of being a peaceable and law-abiding citizen, erred in not permitting him to introduce other witnesses, who would testify to the same facts. If the State admitted that appellant's reputation in these respects was good there was no error; otherwise the court should not limit the introduction of this character of testimony unless carried to an extreme.

7. Appellant complains that the court erred in not permitting his witness, Lieut. T. C. Harry, to testify that just a short time before the killing he, the witness, had instructed appellant "to keep the people out of said enclosure at all hazards." The witness, as an officer superior in rank, should have been permitted to state that he had given appellant instructions to keep the people out of the enclosure, but even if he commanded at all hazards, this would not authorize appellant to kill a person, or violate the law, in order to do so. ·Appellant, under such instructions, would be authorized to use only such means as were necessary to accomplish this without taking life or committing an assault. He would be authorized, perhaps, to arrest a person seeking to force his way into the enclosure, and if necessary call others to his assistance, but in times of peace an officer can not give such commands as would authorize the taking of human life.

8. There was no error in not permitting the United States Army regulations to be introduced in evidence. The duties of the National Guard are defined in the Military Act of the Legislature, and in sections 16 and 17 of said Act the governor is alone authorized to prescribe regulations governing the militia, and in the absence of proof that the governor of this State had adopted and promulgated such regulations they would not be binding on the Texas militia in times of peace.

9. Neither do we think the court erred in not permitting the witness Roach to state that the militia is part of the United States soldiery. . It was not material to any issue in this case. Nor do we think, in the light of the qualification of the court to this bill, there was any error committed in not admitting the other testimony complained of in the bill.

The court says: "The court permitted Major Roach and all other witnesses who were tendered on that question to testify to all instructions given to the soldiers as a body and the defendant individually."

There are other matters complained of in the motion for a new

trial, but if the case is tried in accordance with the opinion here rendered they will not occur on another trial.

Appellant, when called out and given orders to perform certain duties, in the performance of those duties occupied the position of any other officer. In times of peace a militiaman has no more right to take human life than any other officer or citizen. Nor is he by reason of being in the militia service deprived of any right that any other official or citizen is entitled to under the Constitution and laws of this State. If in the performance of his duties his life became endangered, or if it apeared to him under all the facts and circumstances in evidence that some person was about to assault him with the intention of killing him, or doing him some serious bodily injury, he would have the right to act in self-defense. On the other hand, he must be judged as any other officer, and if it did not at the time reasonably appear that he was in danger of losing his life or suffering some serious bodily injury, he would not have the right to take human life, and if he does so under such circumstances he must pay the penalty of the law.

For the errors pointed out the judgment is reversed and the cause is remanded.

*Reversed and remanded.*