### J. D. MANLEY v. STATE.

#### No. 2218.   Decided March 5, 1913.

**1.—Murder—Continuance—Want of Diligence.**

Where defendant's fourth application for a continuance showed that some of the alleged absent witnesses appeared and testified; that the diligence as to others was insufficient, and those, where due diligence had been used, could only testify to cumulative facts, there was no error in overruling same.

**2.—Same—Jurisdiction—National Guard.**

The Act under which the State Militia, termed National Guard, is organized provides that the State courts shall have jurisdiction of offenses committed by militia men; besides, this is the law exclusive of this statute, in times of peace, and where the District Court first obtained jurisdiction, the same attached throughout.

**3.—Same—Evidence—Dying Declarations—Predicate.**

Where the proper predicate was laid and the dying declarations based thereon were admitted, there was no error; and even that part of deceased's declarations which the court, on a former appeal, held to be inadmissible, and which was not in fact admitted, was admissible. Following Pierson v. State, 18 Texas Crim. App., 524, and other cases.

**4.—Same—Evidence—National Guard.**

Where it was admitted by the State that the call for the militia was regular and made by proper authority, and that defendant was legally at the place where the difficulty occurred, there was no error in excluding other testimony of this character.

**5.—Same—Requested Charges—Manslaughter—Adequate Cause.**

Where all the requested charges on manslaughter were covered by the court's main charge, except two, which were not the law of the case on adequate cause, there was no error; besides, the court properly submitted the issue of manslaughter.

**6.—Same—Self-Defense—Accidental Killing—Negligent Homicide.**

Where, upon trial of murder, the court properly submitted self-defense and accidental homicide, as raised by the evidence, and the issue of negligent homicide was not raised by the evidence, there was no error in the court's failure to submit the latter.

**7.—Same—Charge as a Whole—Sufficiency of the Evidence.**

Where, upon trial of murder, the defendant was convicted of murder in the second degree which was sustained by the evidence under a proper charge of the court, when considered as a whole, there was no error.

Appeal from the District Court of Ellis. Tried below before the Hon. F. L. Hawkins.

Appeal from a conviction of murder in the second degree; penalty, forty years imprisonment in the penitentiary.

The opinion states the case.

*Will Hancock* and *Albert Walker* and *J. C. Muse,* for appellant.— On question of the court's charge on manslaughter: Gilcrease v. State, 33 Texas Crim. Rep., 619; Rice v. State, 51 id, 255; Brown v. State, 54 Texas Crim. Rep., 121, 112 S. W. Rep., 80; Huddleston, v. State, 54 Texas Crim. Rep., 93, 112 S. W. Rep., 64; Snowberger v. State, 58 Texas Crim. Rep., 530, 126 S. W. Rep., 884; Coffin v. U. S., 156 U. S., 432; Eanes v. State, 10 Texas Crim. App., 421.

On question of imperfect self-defense and manslaughter: Lankster v. State, 56 S. W. Rep., 65.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant in this case was convicted of murder in the second degree and his punishment assessed at forty years confinement in the State penitentiary.

This is the second appeal, the opinion of the court on the former appeal being reported in 62 Texas Crim. Rep., 392.

It appears that the militia, acting under the direction of its superior officers had roped or wired off a portion of certain streets in the City of Dallas near the Fair Grounds, on the occasion of President Taft's visit, and the militia were given instructions to prevent any persons from entering the grounds so fenced off. Appellant was placed along this line, guarding a certain section of it. The State's testimony would show that deceased and a companion approached the wire and asked permission to cross, in order to catch a street car. Appellant refused them permission, when deceased called his attention to the fact that others were crossing, and insisted on being permitted to do so. Appellant replied he wanted "none of his lip" and struck deceased on the shoulder with his gun, knocking his hat off. Deceased remarked something about this being a nice or pretty way for a soldier to act, stooping at the time to pick up his hat, when appellant plunged his bayonet clean through his body, inflicting a death wound. Appellant, in his testimony, would have deceased cursing and attempting to force his way across the inclosure when he struck him, and he says he then brought his gun to a "charge bayonet position," when, it becoming intangled on the wire, he attempted to get it loose, and in the effort to do so, deceased was pushed or in some way was forced on the bayonet, and the killing was unintentional and accidental. Some witnesses for the appellant would have deceased when he was hit on the shoulder, curse, step back, and throw his hand to his rear pocket, as if to draw a weapon, when appellant inflicted the fatal wound.

The witnesses for the State testify that the gun did not become

entangled in the wire; that deceased made no demonstration as if to draw a weapon, but when he said that was a nice way for a soldier to act, appellant deliberately plunged the bayonet into him, making a remark, when asked about it immediately thereafter, showing it an intentional act.

The first bill complains of the action of the court in overruling his fourth application for a continuance. The approval of the court shows that two of the witnesses named in the application appeared and testified during the trial, the testimony of a third was reproduced; and as to the other witnesses named, we think the diligence insufficient in the main; and if sufficient as to some, the testimony of those would be but cumulative of that adduced on the trial, and this being the fourth application for a continuance, the court did not err.

The next bill shows that appellant filed a plea alleging that the courts of this State had no jurisdiction of the offense. The act under which the State militia, termed "National Guard," is organized provides that the State Courts shall have jurisdiction of offenses of this character. (See sec. 103 of Article 30.) But, exclusive of this article, when a soldier in time of peace, commits an offense against the laws of a State, the courts of the State in which the offense is committed have jurisdiction of the offense. The offense charged against appellant was a capital offense; the courts of this State first obtained jurisdiction and under no theory of the law could it be deprived of that jurisdiction. The case relied on by appellant must be that of Grafton v. United States, 206 U. S., 348, but even that case holds that in the character of case charged against appellant, the District Courts of this State would have exclusive jurisdiction, having first obtained jurisdiction.

The appellant objected to what was claimed was the dying declaration of deceased being introduced in evidence, and under such circumstances there was no error in the court permitting evidence to be introduced to show that he, by his acts, words and conduct demonstrated that he was sane, in full possession of his mental faculties, and knew and appreciated the fact that he was in a dying condition, and entertained no hope of recovery. Neither was there error in admitting the statement in evidence. It reads:

"St. Paul Sanitarium, Dallas, Texas, October 23, 1909.

"I, Louis Reichenstein, now realizing that I am probably at the point of death, declare that I was stabbed by one of the soldiers at the Fair Grounds today. * * * I asked the soldier to permit me to cross the line to catch a car, and he refused me and struck me across the right shoulder with his gun. I made the remark to him then: 'Wasn't that a nice thing to do,' and thereupon without word or warning he ran his bayonet right through me.

(Signed)    "L. Reichenstein."

The court excluded that portion of the statement which this court held was inadmissible on the former appeal. The only error, if error there be, was in following the opinion of the court and excluding that part which was excluded. It is true that we held on the former appeal, it should not have been admitted, and this is still the writer's individual opinion, but there are many cases that hold that the expression used was but a short-hand rendition of the facts and was admissible. Pierson v. State, 18 Texas Crim. App., 524; Roberts v. The State, 5 Texas Crim. App., 141; Sims v. The State, 36 Texas Crim. Rep., 154. Many other cases might be cited, but these evidence there was no error in admitting that portion of the statement which was admitted in evidence.

There was no error in excluding that portion of the evidence of the witness S. E. Moss, which was excluded. It was admitted by the State, as shown by the court in his approval of the bill, and the evidence that the call for the militia was regular and made by proper authority, and appellant was legally at the place where the difficulty occurred; therefore the testimony offered could have served no useful purpose.

Appellant requested many special charges, but they were all covered by the court's main charge except two, and in those two he sought to have the court instruct the jury that if deceased intended to enter the inclosure guarded by defendant, or it so appeared to the dendant, and the defendant intentionally thrust him with the bayonet and killed him, his offense would be manslaughter. This is not the law, and the court did not err in refusing the charges presenting that theory. It takes both adequate cause and sudden passion, etc., to reduce an offense to the grade of manslaughter.

The court in his charge submitted manslaughter and did so in an appropriate charge under the evidence in this case. Every phase of the evidence which could raise this issue was presented in an admirable way, and the criticisms of the charge in this respect are without merit.

Self-defense was also properly presented to the jury for their consideration and determination in a most favorable light. After submitting self-defense in accordance with the testimony, the court also charged the jury on the law of accidental homicide, telling them:

"If you should find and believe from the evidence that the deceased L. Reichenstein came to his death because of a bayonet wound inflicted by a bayonet upon a gun in the hands of the defendant, yet if said killing was unintentional and accidental so far as this defendant was concerned, the same would not constitute any violation of the law and the defendant could not be punished therefor. I therefore instruct you that (a) If the defendant Manley placed or thrust his bayonet in front of himself or over, upon or across the wire of the inclosure, and the deceased ran against said bayonet or precipitated himself accidentally or intentionally against said bayonet, and the

wound was inflicted in this manner, and if he died therefrom, this would be accidental homicide; (b) if Manley placed or thrust his gun on the wire of the inclosure, and his gun caught on the wire, and in extricating or removing, or attempting to extricate or remove the same from the wire, the deceased was unintentionally wounded by the bayonet, and died from such wound, this would be accidental homicide; (c) if defendant Manley, in the performance of his duties, had presented his bayonet in front of himself, or had placed or thrust his gun above, over or across the wire of said inclosure, and the deceased was pushed against the said bayonet by other persons and was accidentally wounded by said bayonet on said gun, and died from such wound, then the killing would be accidental homicide; (d) if in any manner the deceased was accidentally injured by the bayonet upon the gun of the defendant, either by the act of the defendant or by the deceased or other persons, but the same was accidentally done and without any intention on the part of the defendant to kill or seriously injure the deceased, then such killing would be accidental homicide. Hence, you are instructed that although you may find that the defendant Reichenstein came to his death from being thrust through with a bayonet upon a gun in the hands of the defendant, yet if the said wound was inflicted under any of the circumstances above set forth, or if you have a reasonable doubt thereof, and the deceased died therefrom, then this would be accidental homicide and you will acquit the defendant."

The evidence raised the issue of accidental homicide and not negligent homicide. Under no phase of the testimony would the conditions arise which would call for a charge on negligent homicide of either the first or second degree.

We have carefully examined each ground in the motion for new trial, and while appellant picks out here and there a paragraph or sentence and criticizes same, yet when the whole paragraph and charge is read, it is readily seen there is no ground upon which to base the criticism. Every phase of the law was presented, and the judgment is affirmed.

*Affirmed.*