## JIM CORBITT v. THE STATE.

### No. 2830.    Decided January 14, 1914.

#### Rehearing denied February 11, 1914.

**1.—Murder—Dying Declarations—Evidence.**

Where, upon trial of murder, the proper predicate having been laid, there was no error in admitting in evidence the dying declarations of deceased that he was bound to die; that the trouble came up over nothing; that the parties had been quarreling about the books and that deceased started to get up and go away when defendant cut him.

**2.—Same—Evidence—Dying Declarations.**

In the absence of a bill of exceptions to the admissibility of testimony showing the dying declarations of deceased, the same can not be reviewed on appeal; besides, the same were admissible, there being nothing in the record to show that defendant weakened the State's case or that he asked special instructions.

**3.—Same—Evidence—Res Gestae.**

Upon trial of murder, there was no error in admitting testimony that deceased was carried to a drug store, where it was found that his intestines were protruding and that he remarked that that fellow took my life for nothing, all this occurring right after the difficulty.

**4.—Same—Evidence—Ill-will.**

Upon trial of murder, there was no error in admitting testimony that some two or three weeks before the fatal encounter, defendant and deceased quarreled over their books, defendant objecting to the manner in which deceased kept the books, defendant claiming in his testimony that deceased and not he made such objections. It was also admissible to show motive.

**5.—Same—Cause of Death—Charge of Court.**

Where there was no evidence of improper treatment of the deceased after he was wounded by the defendant, there was no error in refusing a requested charge on this subject.

**6.—Same—Deadly Weapon—Charge of Court.**

Where, upon trial of murder, there was proof that the knife used by the defendant was a deadly weapon, but the court, nevertheless, submitted this question to the jury, there was no error.

**7.—Same—Charge of Court—Manslaughter—Sudden Passion—Adequate Cause.**

Adequate cause without passion will not reduce the offense to manslaughter, neither will passion without adequate cause; it takes the two combined to make manslaughter, and where the court properly submitted the law thereon, there was no error. Following Blackwell v. State, 29 Texas Crim. App., 194, and other cases.

**8.—Same—Manslaughter—Charge of Court—Conjunctive.**

Where, upon trial of murder, the court in defining adequate cause instructed the jury that an assault and battery causing pain and bloodshed, etc., is deemed

adequate cause, but in applying the law to the facts, so instructed the jury that the use of the word "and" in place of the word "or" in the definition of the offense, did not present reversible error, there was no error. Davidson, Judge, dissenting.

**9.—Same—Evidence—Opinion of Witness—Res Gestae.**

The words by the deceased, "that fellow took my life for nothing," was admissible as res gestae, and was not a mere expression of opinion. Following Carter v. State, 8 Texas Crim. App., 372, and other cases.

**10.—Same—Definition of Offense—Charge of Court—Manslaughter.**

Although there may have been some slight error in that part of the court's charge defining adequate cause, yet the court in applying the law to the case gave an accurate charge of the law applicable to the evidence, there was no reversible error. Following Carter v. State, 59 Texas Crim. Rep., 73, and other cases. Davidson, Judge, dissenting.

Appeal from the District Court of Milam. Tried below before the Hon. J. C. Scott.

Appeal from a conviction of murder in second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*U. S. Hearrell* and *Henderson, Kidd & Gillis,* for appellant.—On question of court's charge on manslaughter: Foster v. State, 8 Texas Crim. App., 248; Childers v. State, 33 Texas Crim. Rep., 509; Lee v. State, 54 id., 382.

On question of declarations of deceased: Jones v. State, 22 Texas Crim. App., 324; Stevens v. State, 20 id., 255; Bateson v. State, 80 S. W. Rep., 88; Connell v. State, 81 S. W. Rep., 746.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted, tried and convicted of murder in the second degree, and his punishment assessed at five years confinement in the penitentiary.

There are a number of bills of exception in the record, mainly relating in substance to the same matter—that is, declarations of deceased.

The State proved by G. C. Murray that he was with deceased a short time before his death, and that deceased in talking about the difficulty said: "Mr. Murray, I am bound to die; this trouble came up over nothing. We had been quarreling about the books and I started to get up and go away and he (appellant) cut me while I was getting up and that was just about the size of it, I guess." The testimony of this witness, and the testimony of Miss Hattie Stribling, the nurse, shows that deceased was rational at the time he made this statement; that he knew he was going to die, and had no hope of recovery. This would make the dying declarations admissible, if. the testimony would be admissible as the testimony of the witness if living. We do not think anyone could question that if appellant was being prosecuted for an assault to murder, and the deceased was living, that the living witness would be thus per-

mitted to detail the facts, and the court committed no error in admitting
the testimony. Miss Hattie Stribling testified that she was a trained
nurse, and nursed deceased, and remained with him until he died. That
he knew he could not live, and never at any time expressed any hope
of getting well, and she says deceased told her: "Do you know we
were sitting there talking and the trouble came up over the books, ab-
solutely nothing but the books, and I saw we were going to get into a
fuss, and I started to get up and he caught me—when I started to get
up he cut me, saying 'I will cut you, you s—n of a b—h,' when deceased
replied, 'Jim, you have cut me, you have killed me.'" While in the
motion for new trial complaint is made as to the admissibility of this
testimony, but no exception was reserved, consequently it is not presented
in a way we can review the matter, but if an exception had been reserved,
as in the first instance above, the testimony would have been admissible
as a dying declaration. Appellant cites us to the cases of Hunnicutt
v. State, 18 Texas Crim. App., 498, and Ex parte Meyers, 33 Texas
Crim. Rep., 204. With the rules of law there stated governing the ad-
missibility of dying declarations we thoroughly agree, but the evidence
in this case brings this case within the rules announced in those cases.
The State's evidence made the testimony prima facie admissible; if ap-
pellant's contention is that in his cross-examination he weakened the
State's case and adduced testimony that tended to show that deceased
at the time may not have been in his right mind, induced by the med-
icine he had taken, upon that theory if he had asked a special charge
instructing the jury that unless they found deceased was in his right
mind at the time he made the declarations, not to consider the testimony,
it would perhaps have been proper to have given such charge. But
no such special charge was requested. No complaint is made of the
charge as given in this respect. The only objection made being that the
testimony was inadmissible, and this can not be sustained under all of
our decisions.

The next two bills relate to the same matter. Roy Hillyer testified
that right after the difficulty he aided in carrying deceased to the drug
store across the street, where they sat him down in a chair. That de-
ceased asked that his pants be unbuttoned; and when this was done,
it was found deceased's intestines were protruding through the cut
in his stomach, and deceased remarked: "That fellow took my life
for nothing." Dr. W. L. Baird testified to the same statement. This
was clearly admissible as res gestae. Drake v. State, 29 Texas Crim.
App., 265.

The State proved by Wm. Stutts that some two or three weeks before
the fatal encounter he heard appellant and deceased quarreling over the
books, they being partners in the butcher business. The books showed
$44.75 as the amount taken in. Appellant claimed that the amount was
wrong—that he had gone over the matter the night before and made
it different. Appellant and deceased were fussing over this, when ap-
pellant remarked, "he knew d—n well it was not right." Deceased re-

plied he "knew d——n well it was right." The witness Stutts then advised them to cease their quarreling and go with him to get a drink. The fact that this testimony was not introduced by the State in originally making its case, but was introduced after the defendant had introduced his testimony, presents no error. Under our Code this is a matter left within the sound discretion of the trial court, and this testimony was admissible as tending to show the motive for the killing. The State's evidence would show that the fatal encounter grew out of a discussion of the way of keeping the books, discrepancies therein, etc. Appellant by his testimony would have deceased as the one objecting to the manner the books were kept, and raising this matter, while the testimony of Mr. Stutts would show that it was appellant raising this trouble over the books, and if for no other reason it would be admissible in rebuttal of his testimony. But it was admissible on the ground as explaining the basis of difference between the parties, and the trouble out of which the fatal difficulty grew.

Appellant requested a special charge instructing the jury that if deceased died from peritonitis and that same was caused by any act on his part in not properly taking care of his wound or his entrails that were protruding, they would acquit him of murder. If the evidence raised any issue of want of proper care or treatment this principle of law would be applicable, but the testimony and all the testimony would show prompt, efficient, careful and skillful attention on the part of the attending physicians and nurse, and the court did not err in refusing the charge. Although a physician testified that the knife used by appellant was a deadly weapon, yet out of the abundance of caution the court instructed the jury:

"Our law provides that the instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the party offending. If the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used, such intention evidently appears.

"Now, if you believe from the evidence that the instrument used by the defendant was one not likely to produce death, and you further believe that from the manner of its use death was not designed and intended, then you can not find the defendant guilty of murder in the second degree or manslaughter, although the deceased died from the effects of the wound of the instrument in the hands of the defendant.

"Where a homicide occurs under the influence of sudden passion but by the use of means not in their nature calculated to produce death, the person killing is not deemed guilty of homicide, unless it appears that there was an intention to kill, but the party from whose act the death resulted may be prosecuted for and convicted of any grade of assault and battery."

After so instructing the jury the court then properly submits to the jury the issue of aggravated assault. The only other complaint in the motion relates to the charge on manslaughter. In this connection the

court instructed the jury: "In order to reduce a voluntary homicide to the grade of manslaughter, it is necessary not only that adequate cause exists to produce the state of mind referred to, that is, of anger, rage, sudden resentment, or terror, sufficient to render it incapable of cool reflection, but also that such state of mind did actually exist at the time of the commission of the offense." Appellant's contention is that if "adequate cause" existed, "regardless of whether it produces sudden passion, rendering the mind incapable of cool reflection," that it would reduce the offense to manslaughter. This is not the law, but under all our decisions "adequate cause" must be shown to produce the anger, and it must further appear that this cause did produce such anger as to render the mind incapable of cool reflection. Adequate cause without passion will not reduce the offense to manslaughter, and neither will passion without adequate cause. It takes the two combined. Article 1137, Penal Code; Blackwell v. State, 29 Texas Crim. App., 194; Clore v. State, 26 Texas Crim. App., 624; McKinney v. State, 8 Texas Crim. App., 626; Hill v. State, 11 Texas Crim. App., 456; Neyland v. State, 13 Texas Crim. App., 536.

The next complaint of the court's charge on manslaughter relates to the following paragraph found in the definition of the offense: "The following are deemed adequate causes: An assault and battery causing pain and bloodshed; *or any condition or circumstance which is capable of creating and which does create sudden passion* (italic ours) which renders the mind of a person of ordinary temper incapable of cool reflection, is deemed adequate cause." The criticism is that in the first part of this paragraph the court requires the jury to find an assault causing both pain and bloodshed, while the statute provides that an assault causing either pain or bloodshed will be adequate cause. This part of the definition is incorrect, as applicable to the evidence in this cause, as there is no evidence that an assault was made causing both pain and bloodshed, and had this error been carried forward into that portion of the charge applying the law to the facts and submitting the issue to the jury, it would perhaps present reversible error. But it will be noticed that the court in addition to telling the jury that an assault causing pain and bloodshed would be adequate cause, also instructed them that *any condition or circumstance* capable of creating sudden passion would be adequate cause. If manslaughter is in the case it is raised by appellant's testimony, and by his testimony alone. He, testified that he and deceased were sitting down, and when Young (deceased) got up, he (deceased) hit him with the back of his hand. He does not claim that this caused him pain or angered him, but he swears on the other hand that "this did not excite him," consequently under his testimony and article 1131 of the Penal Code this could not be adequate cause, and would not raise the issue of manslaughter. Then what portion of his testimony does raise the issue of manslaughter? He testified further that deceased then went into the street and picked up a brick and threw it at him, but missed him, and then stooped and

picked up another brick, and by this time he had run to him when deceased hit him over the head with a brick and knocked him down. This would be adequate cause to reduce the offense to manslaughter if it caused such passion as to render the mind incapable of cool reflection. In submitting the offense to the jury the court instructed them: "If you believe from the evidence that prior to or at the time of the cutting defendant and deceased had a difficulty and that after said trouble deceased threw a brick bat at defendant and reached for or had another brick, and all or any of said alleged facts, *or that any other acts of deceased prior to or at the time of the cutting,* created in the mind of the defendant sudden passion which rendered his mind incapable of cool reflection, and you believe beyond a reasonable doubt that defendant cut deceased with a knife and killed deceased, and you further believe from the evidence that the knife, from the manner of its use, if it was used, was a deadly weapon, you will find the defendant guilty of manslaughter and assess his punishment at confinement in the State penitentiary for a term of years not less than two nor more than five. And in passing upon the condition of defendant's mind at the time of the cutting, you will take into consideration any previous dispute between defendant and deceased, unless you acquit the defendant under other charges herein given you." This submitted the issue of manslaughter as raised by the testimony of defendant, and his was the only testimony raising that issue. As the court thus correctly and aptly applied the law to the facts in submission of this issue, the use of the word "and" in place of the word "or" in the definition of the offense does not present reversible error. It will be noticed that the court not only told the jury that "if deceased threw a brick bat at defendant and reached for another brick," but also instructed them "and all or any of said facts, or that any other act of deceased prior to or at the time of the cutting, created in the mind of the defendant sudden passion," etc., they would find defendant guilty of manslaughter. Taking the record as a whole, the court's charge was very favorable to defendant. The State's evidence is that appellant inflicted the fatal cut when deceased was doing nothing but attempting to get away, and when they were separated made the remark: "D—n you, I will kill you." If the mortal blow was inflicted at the time the State's evidence would show it was inflicted, there would be no manslaughter in the case. If inflicted under the circumstances appellant's testimony would tend to show, manslaughter might be in the case, if deceased's acts raised such passion as to render the mind incapable of cool reflection, but on this issue the court in his charge directly and pertinently applied the law to the facts, and left the issue of fact to be found by the jury, as he should have done, under appropriate instructions.

The judgment is affirmed.                                    *Affirmed.*

DAVIDSON, JUDGE.—I think the court's charge on manslaughter

fatally erroneous. He should not have charged that it required conjunction of pain and bloodshed to constitute adequate cause. Either will be sufficient under the statute. Nor did the court inform the jury that if deceased struck appellant with the brick on the head, knocking him down, producing pain, it would constitute adequate cause. Where the statute states adequate cause the charge must so inform the jury.

## ON REHEARING.

### February 11, 1914.

HARPER, Judge.—Appellant in his motion seeking a rehearing complains of the opinion in but two instances. First, that we erred in holding the testimony of Dr. Baird and Roy Hillyer admissible as res gestae. Appellant says: "We concede that if proximity of time and place were the only tests that such holding would be correct," but he insists that the statement: "That fellow took my life for nothing" is inadmissible as it is but the expression of an opinion. In the case of Manley v. State, 154 S. W. Rep., 1008, the writer expressed an opinion that if this was an original proposition he would be inclined to agree with appellant, but that the decisions of this court held otherwise, and in deference to such opinions he would not disturb the rule of law heretofore prevailing. In the case of Roberts v. State, 5 Texas Crim. App., 141, this court held the statement, "that Johnson said Roberts had killed him for nothing," was admissible as a res gestae statement. See also Carter v. State, 8 Texas Crim. App., 372; Medina v. State, 63 S. W. Rep., 331; Sims. v. State, 36 Texas Crim. Rep., 154; Pierson v. State, 18 Texas Crim. App., 524. Many other cases might be cited, but we deem it unnecessary, all holding that such a statement is a statement of a fact, and not the expression of an opinion.

Appellant's other contention is the error in the definition of adequate cause should reverse the case. As shown in the original opinion, in the paragraph submitting the issue of manslaughter to the jury for a finding, the court aptly applied the law to the evidence adduced on the issue of manslaughter, and having done so, the use of the word "and" where "or" should have been in the definition does not present reversible error. In the case of Moss v. State, 60 Texas Crim. Rep., 268, this court, in an opinion by Judge Davidson, held that, although there was some slight error in that part of the charge giving the definitions, yet if the court in applying the law to the case gave an accurate charge as applicable to the evidence, it would not necessitate a reversal of the case. In the case of Carter v. State, 59 Texas Crim. Rep., 73, there was an error in the "definition," but in applying the law the court correctly did so, and it was held to present no error. In Eggleston v. State, 59 Texas Crim. Rep., 542, it was held that the charge taken as a whole correctly applied the law and no error is presented. See Ward v. State, 70 Texas Crim. Rep., 393, 159 S. W. Rep., 272, and cases there cited.

The motion for rehearing is overruled.

*Overruled.*

DAVIDSON, JUDGE (dissenting).—When the original opinion was handed down I added a few remarks indicating my dissent from the majority opinion. The court charged the jury that "an assault and battery, causing pain and bloodshed; or any condition or circumstance which is capable of creating and which does create sudden passion which renders the mind of a person of ordinary temper incapable of cool reflection, is deemed adequate cause." Judge Harper in the opinion concedes this to be error, because the statute provides that it is only an assault and battery causing pain or bloodshed which constitutes adequate cause. Under the statute itself, and under all the authorities, either will constitute adequate cause. It is not necessary under any circumstances that the two shall be combined. He says, however, that this was cured by the court's charge. This is an application of the law by the court: "If you believe from the evidence that prior to or at the time of the cutting, defendant and deceased had a difficulty and that after said trouble deceased threw a brick bat at defendant and reached for or had another brick, and all or any of said alleged facts, or that any other acts of deceased prior to or at the time of the cutting, created in the mind of the defendant sudden passion which rendered his mind incapable of cool reflection, and you believe beyond a reasonable doubt that defendant cut deceased with a knife and killed deceased, and you further believe," etc. An inspection of this charge does not show and utterly fails to disclose the fact that the court instructed the jury that if deceased struck appellant with a brick bat causing pain, it would be adequate cause. The charge narrates a lot of the circumstances, but that is not sufficient where the statutory ground is the basis of the charge. Quoting from the original opinion we find this language: "Then what portion of his testimony does raise the issue of manslaughter? He testified further that deceased then went into the street and picked up a brick and threw it at him, but missed him, and then stooped and picked up another brick, and by this time he had run to him when deceased hit him over the head with a brick and knocked him down. This would be adequate cause to reduce the offense to manslaughter if it caused such passion as to render the mind incapable of cool reflection." An investigation of this charge, either by a casual or careful reading of it, fails to show that this issue was ever submitted to the jury by the court in its charge. I have copied above the definition, and then the application. Under all the authorities in Texas where the cause is statutory, the court must instruct the jury pertinently that if this statutory cause existed and produced such passion as to render the mind incapable of cool reflection, the case would be manslaughter. Mr. Branch lays down the rule tersely and correctly as follows: "If there is evidence of a condition or circumstance made adequate cause by statute as an assault causing pain, etc., it is error to leave it to the jury to find whether it constitutes adequate cause; charge should state that it is adequate cause." Branch's Crim. Law, section 512. The authorities are so numerous as collated by him it is unnecessary here to collate them. They will be found by turning to this

section of Mr. Branch's Criminal Law. Again he lays down the rule: "If a cause made adequate cause by statute is in evidence, charge must not only tell jury that same is adequate cause, but must apply the law to the facts, and tell them (for example) that if blow was struck and that it caused pain or bloodshed, and that it aroused defendant to such a degree of anger, rage, sudden resentment or terror as rendered his mind incapable of cool reflection at the time of the homicide, that he should not be found guilty of anything higher than manslaughter. Low v. State, 20 S. W. Rep., 366; Attaway v. State, 41 Texas Crim. Rep., 395; Ware v. State, 49 Texas Crim. Rep., 413; Horn v. State, 50 Texas Crim. Rep., 404; Gillespie v. State, 53 Texas Crim. Rep., 167; Brown v. State, 54 Texas Crim. Rep., 121; Griffin v. State, 40 Texas Crim. Rep., 312." If there is cause independent of the statutory cause, and both causes existing, that is, if the statutory adequate cause is testified, and there are other independent facts and circumstances which are capable of producing the requisite sudden passion, then both must be given in charge to the jury in submitting manslaughter. It will not be sufficient to combine the two in the general charge. The jury must be told if adequate cause existed, mentioning it, and if sudden passion was present, manslaughter should be awarded, or if there are other facts and circumstances in the case producing sudden passion, then manslaughter would be in the case, and where they both exist both must be charged; especially so if the punishment inflicted is higher than the minimum. There is no question, I take it, from even the original opinion of the majority that the deceased struck the defendant on the head with a brick bat, and this being the attitude this phase of the case manslaughter should have been given specifically with reference to this statutory adequate cause, and it is error and fatal error not to give it, and it has been so held under all the authorities so far as I am aware. I do not care to go into an extended discussion of the matter. This charge is wrong and fatally so, and in the face of all the authorities. This judgment should be reversed and the cause remanded, and because it has not been I enter most respectfully my dissent.