LUTHER KENNAMER v. THE STATE.

No. 2224.   Decided November 15, 1922.

Rehearing Denied February 14, 1923.

**1.—Murder—Dying Declarations—Approaching Death.**

Where the evidence raised the issue as to whether the statement was made at a time when the declarant was conscious of approaching death, the court properly submitted this issue to the jury in a fair and complete charge to which no objection was raised, there is no reversible error.

**2.—Same—Entire Statement—Parenthesis.**

Where complaint was made of the entire alleged dying declaration, incorporating as a part thereof that portion shown in parenthesis, but the

record showed that this part of the statement was not read to the jury as a part of the dying declaration, and further that certain language in the statement was brought out on cross-examination by defendant's counsel, there is no reversible error.

**3.—Same—Rule Stated—Excluding Part of Statement.**

Where defendant contended that the court having excluded part of the statement as not being part of the purported dying declaration, was in error in admitting any of it, held, that any part of a written dying declaration which is admissible may go to the jury, and the inadmissible part may be excluded. Following Walker v. State, 85 Texas Crim. Rep., 482, and other cases.

**4.—Same—Date of Offense—Dying Declaration.**

Where complaint was made that incorporated in the dying declaration was the expression (on the 27th day of August, 1917), when the county attorney had testified that declarant might not have used such expression, but there was no controversy about the date of the difficulty as being on said date, there is no reversible error.

**5.—Same—Dying Declarations—Conclusion of Declarant.**

Where appellant complained of the expression, "And raised a row with me" as being a conclusion of the declarant but the record showed that no objection was made to this declaration, there was no error; besides, the objection was without merit. Following Corbitt v. State, 72 Texas Crim. Rep., 396, and other cases.

**6.—Same—Predicate—Bill of Exceptions.**

Where the bill of exceptions did not show the predicate and all of the predicate laid, in the objection to the admission of the dying declaration, the same cannot be considered on appeal; besides, the predicate as laid is sufficient. Following Hill v. State, 88 Texas Crim. Rep., 179.

**7.—Same—Rehearing—Predicate—Dying Declaration—Question of Fact.**

Where the State contended that the predicate was sufficiently laid, and the accused that it was not, and the trial court submitted this question to the jury in a proper charge, there was no reversible error.

**8.—Same—Words and Phrases—Practice on Appeal.**

The fact that the county attorney testified that he wrote the words, "On the 27th of August, 1917," and that he would not be positive that the deceased used these words, would not justify the rejection of the same, and there being no controversy as to the date of the killing, there was no reversible error. Following Walker v. State, 88 Texas Crim. Rep., 389.

Appeal from the District Court of Jones. Tried below before the Honorable W. R. Chapman.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*W. H. Murchison* and *B. B. Sturgeon,* for appellant. On question of dying declaration and consciousness of approaching death, Edmonson v. State, 41 Texas, 497; Lister v. State, 1 Texas Crim. App., 740; Morgan v. State, 54 Texas Crim. Rep., 543; Figoroa v. State, 58 id., 611.

*R. G. Storey,* Assistant Attorney General, and *Thomas & Pope,* for the State. On question of admitting part of dying declaration, Walker v. State, 227 S. W. Rep., 308, and cases cited in opinion.

HAWKINS, JUDGE.—Appellant was convicted for the murder of C. F. Davis, his punishment being assessed at ten years in the penitentiary.

Some one had cut the tail off a cow which belonged to appellant's mother. Deceased was suspected of having committed the act. On the day of the homicide appellant went to the premises of deceased where the latter was cutting sorghum and throwing it over the fence to his stock and made inquiry about the cow, asking the deceased why he had cut off her tail. No one was present but appellant, deceased and the latter's small daughter. Appellant's testimony raised the issue of self-defense on the theory that deceased was armed with a stick and advancing on appellant, trying to come through the fence with the stick when appellant shot him. This was combatted by the evidence of Ruby Davis and the dying declaration of deceased. It was established that the shooting occurred on the 27th day of August, and that deceased lingered until September 17th, dying on the date in the Stamford Sanitarium in Jones County to which he was taken immediately after he was wounded. A dying declaration was taken from deceased by the county attorney on September 16th.

The only bills of exception in the record relate to the admission in evidence of this dying declaration. It was in writing and the entire statement is as follows:

("I, C. F. Davis, being conscious of approaching death and believing that I am going to die from my present sickness, desire to make this my voluntary statement relative to being shot by Luther Kennamer.)

On the 27th day of August, 1917, Luther Kennamer came to my house and to my field, where I was working and raised a row with me, in which he said 'Speck, you white cap son-of-a-bitch, you have betrayed all of us.' He had his gun in his hand by that time and begin shooting me, he also accused me of having cut off his cow's tail and said he was going to straighten up that business. When he begin to shoot I grabbed for a stick. We were about 25 feet from each other when he shot me and my fence was between us.          His

C. F. Davis          X

Mark."

While the State was laying the predicate for the introduction of the declaration the county attorney testified substantially as follows:

"Deceased made a statement to me in reference to whether or not he was going to die; he told me that he could not get well, was going to die, or the reverse of that, was going to die and couldn't get well. I don't know which he put first. . . . I had previously asked him how he was. . . . He spoke to me, called me by name; I asked that question and he gave that answer and then it was I asked him if he desired to make any statement relative to the trouble had with Luther Kennamer, and he said he did. I then took such statement; I

took it in writing. In taking his statement down in writing, I just took down what he said. I did not ask him questions at all while I was writing down the statement; probably he would make some statement—he was talking in a very low tone of voice—and if I didn't understand what he said I would ask what he said; I didn't ask any questions further than that. In taking the statement I took down it was a straight forward statement as he said it and not by questions and answers. I did not at that time persuade him to make any statement; if any one else did I did not hear it. The statement I took down was a statement voluntarily made by deceased to me as I wrote it down. At the time of making this statement and at the time I took it down, the deceased appeared to be of sane mind, he appeared to be sane."

Upon cross-examination the witness testified that the portion marked in parenthesis was his (witness) language, and not that of deceased, and at the request of appellant's counsel he so marked it, and the part so marked was not read to the jury. He further stated that he would not say that deceased used the language: "On the 27th day of August, 1917." Dr. Southard testified that deceased always expressed to him the hope that he would get well, and said he was going to get well; that he talked to him the day before he died, but that he could not recall whether he talked to deceased at any time after the statement was made; that he saw him two or two and a half hours before he died, and that he was conscious.

The evidence having raised the issue as to whether the statement was made at a time when the declarant was conscious of approaching death, the trial judge submitted it to the jury in a charge so fair and complete that no objection was made thereto, and the finding upon that issue was favorable to the State.

Several bills of exception complain at the introduction of the entire statement, incorporating as a part thereof that portion shown in parenthesis. All are qualified with the statement that this part of the statement was not read to the jury as a part of the dying declaration. One bill shows exception to the county attorney testifying before the jury as to the language shown in parenthesis. The qualification shows it was not testified to as a part of the dying declaration nor introduced as such. The record shows that this language in the statement was brought before the jury upon cross-examination by appellant's counsel, for which the State cannot be chargeable, and at which appellant cannot complain.

It is urged in another bill that the court, having excluded part of the statement as being no proper part of the purported dying declaration, was in error in admitting any of it. That it being a written statement all or none was admissible. We understand the rule to be to the contrary; that any part of a written dying declaration which is admissible may go to the jury, and the inadmissible part be excluded. Manley v. State, 62 Texas Crim. Rep., 392, 137 S. W. Rep., 1137;

93 T. C.—28

Manley v. State, 69 Texas Crim. Rep., 502, 154 S. W. Rep., 1008; Walker v. State, 88 Texas Crim. Rep., 389, 227 S. W. Rep., 308; Walker v. State, 85 Texas Crim. Rep., 482, 214 S. W. Rep., 331.

Complaint is also made because incorporated in the dying declaration admitted was the expression: "On the 27th day of August, 1917," when the county attorney had testified that declarant might not have used such expression. There was no controversy about the date upon which the difficulty occurred. All parties seem to have agreed that August 27, 1917 was the correct date, and even if the expression complained of was erroneously permitted to go to the jury as a part of the dying declaration, in no conceivable way could it work injury to appellant.

In another bill appellant complains of the expression, "and raised a row with me" as being a conclusion of the declarant. The trial judge in his qualification says this objection was not made to the introduction of the declaration. But even had the objection been urged, we think it without merit. Roberts v. State, 5 Texas Crim. App., 141; Pierson v. State, 17 S. W. Rep., 468; Corbitt v. State, 72 Texas Crim. Rep., 396, 163 S. W. Rep., 436.

Several bills seem to be predicated on the objection to the admission of the dying declaration, because it is claimed no sufficient predicate was laid, or because the predicate was not sufficiently shown in the statement itself. These bills might be dismissed because they do not show the predicate and all the predicate laid. In Hill v. State, 88 Texas Crim. Rep., 179, 225 S. W. Rep., 521, Judge Davidson, speaking for the court, says:

"A bill of exceptions will be held insufficient when taken to supposed error in admitting evidence of a dying declaration without laying the proper predicate, and, to be sufficient, it must contain and state that it does contain all the predicate laid upon which the declaration was admitted, and must further also set out the declaration. Highsmith v. State, 41 Texas Crim. Rep., 37. 50 S. W. 723. 51 S. W. 919; Edens v. State, 41 Texas Crim. Rep., 523, 55 S. W. 815; Hopkins v. State, 53 S. W. 621; Gutirrez v. State. 59 S. W. 274; Medina v. State, 43 Texas Crim. Rep., 53; Francis v. State, 75 Texas Crim. Rep., 362, 170 S. W. 782."

However we are of opinion from the evidence herein before set out that a sufficient predicate was laid for the dying declaration.

Finding no error in the record, an affirmance is ordered.

*Affirmed.*

ON REHEARING

February 14, 1923.

LATTIMORE, JUDGE.—Most strenuous insistence appears in appellant's motion urging that the alleged dying declaration introduced on behalf of the State, was not admissible, and we have been led to care-

fully examine the testimony bearing upon the admissibility of same in the light of the objections urged thereto. As to the predicate on the facts,—death of deceased occurred September 17, 1917, and resulted from pneumonia approximately caused by the gunshot wound inflicted by appellant. Deceased was in a sanitarium from August 27th, the date he was shot, till he died. Dr. Southard testified that there was improvement in the condition of deceased following the operation after injury, but the pneumonia resulting from the injury set in and caused death. The doctor said that deceased expressed himself that he would get well. That he saw deceased the afternoon preceding, and also the night of his death but did not remember hearing deceased make any statement at either of said times of any expectation of recovery. He testified that when he saw deceased on these two last mentioned occasions his condition was critical, that his pulse was very high. Death came about two o'clock on the morning of the 17th. The county attorney of the county called on deceased at the sanitarium between one and three o'clock the afternoon of the 16th, and the dying declaration was made and reduced to writing by him on the occasion of said visit. Dr. Southard testified that he heard from the nurses or from Dr. Bunkley that said declaration or statement had been made by deceased, and in response to the question as to whether he heard deceased make any statement about getting well after that, witness said he did not know. The purported dying declaration, according to the testimony of the county attorney, was made by deceased freely and voluntarily and after a statement by deceased to witness that he could not get well, that he was going to die. The statement was made by deceased in a very low voice, but was taken down by witness in almost the language of deceased.

The taking of the statement was within twelve hours of the death of deceased. Pneumonia had set in. The condition of deceased was known to be very critical. This condition evidently must have been known to deceased himself, to have caused him to make to the county attorney the statement that he was not going to get well but was going to die, a statement variant from that theretofore made by him to Dr. Southard. Turning to our statute, Article 808, C. C. P., and observing the four things there laid down as prerequisites to and forming the predicate for the introduction of a statement as a dying declaration, and asking ourselves whether the testimony as to the existence of these conditions appear in the instant case, we make this observation: The State contends that the predicate was sufficiently laid; the accused, that it was not. In such case courts must either decide for themselves such issue or submit it to the jury. In the instant case the learned trial court gave to the appellant the benefit of possible doubt and submitted the question to the jury, instructing them that unless the State had established beyond a reasonable doubt each of the four grounds made a necessary part of the predicate by Article 808, supra, they should

not consider said declaration for any purpose. The charge of the court on this point is as follows:

"In order to render the dying declaration of deceased competent evidence it must be satisfactorily proved (first) that at the time of making such declaration he was conscious of approaching death and believed there was no hope of recovery; (second) that such declaration was voluntarily made and not thru the persuasion of any person; (third) that such declaration was not made in answer to interrogatories calculated to lead the deceased to make any particular statement; (fourth) that he was of sane mind at the time of making the declaration; and unless the State has proved to your satisfaction all four of said conditions, then you will not consider the statement read in your presence as the dying declaration of deceased for any purpose."

We are at a loss to know what more the court could do. He certainly would not have been justified in rejecting the testimony and holding that the declaration was not admissible.

The objections directed at particular parts of this dying declaration were sufficiently considered in our original opinion. The fact that the county attorney stated that he wrote the words "on the 27th of August, 1917," and that he would not be positive that deceased used these words, would justify neither this court nor the trial court in rejecting same and in refusing to submit this phrase of the dying declaration to the jury. We observe that said witness did state that deceased told him "on what day that happened." This statement appearing in the testimony, and there being no controversy as to the date of the killing or that the facts contained in and referred to in the dying declaration related to an occurrence on said date, we could not estimate or conclude any damage possible to appellant from the admission of this part of the dying declaration. In Walker v. State, 88 Texas Crim. Rep., 389, this court went into an extended discussion of the law of dying declarations, and same appears applicable to the conditions now under discussion.

Finding ourselves unable to agree with appellant, the motion for rehearing will be overruled.

*Overruled.*