## PEOPLE v. ABBOTT.

## No. 10,965; October 6, 1884.

### 4 Pac. 769.

Jurors—Exception to Allowance of Challenge.—No exception can be taken to the decision of a court allowing a challenge. A person summoned as a juror, who entertains conscientious scruples against finding a man guilty of a crime for which he would be hung, must neither be permitted nor compelled to serve as a juror.

Dying Declarations.—Declarations Made by Deceased Held to have been made under a sense of impending death, and therefore admissible as dying declarations.[1]

Confessions.—Evidence of Confessions Made by a Defendant While Under Arrest are admissible, if voluntarily made, the fact that defendant was under arrest not necessarily proving that the declarations were involuntary.

Criminal Law—Evidence.—The Conduct, Acts, and Expressions of a person accused of crime, at the time of his arrest, are admissible against him.

Criminal Law.—Former Conviction of Felony may be Shown by the examination of the witness, or by record of the judgment, and questions asked of the defendant, when testifying on his own behalf, as to such fact, are proper.

Homicide.—Instructions on the Law of Murder and Malice, in the language of sections 187, 188 of the Penal Code, are sufficient.

Homicide—Unlawful Act—Presumption.—When an act is proved to have been done by the accused, if it be an act in itself unlawful, the law in the first instance presumes it to have been intended, and the proof of justification or excuse lies on the defendant to overcome this presumption.

Dying Declarations—Jury to Judge Credibility.—Where dying declarations have been admitted as evidence, the question of their credibility comes within the province of the jury, and they are to give to them such credit as, on the whole, they may think them entitled to.

---

[1] Cited in note to Ann. Cas. 1912C, 436, in connection with State v. Crean, 43 Mont. 47, 114 Pac. 603, which case holds that the prosecution may avail itself of any evidence to show that at the time he made the declaration the deceased knew he was in extremis.

Cited with approval in Medina v. State, 43 Tex. Cr. 53, 63 S. W. 332, where it was held that a dying declaration is admissible to show all the facts immediately connected with the homicide to which a witness, were he present, could testify.

APPEAL from the Superior Court of the City and County of San Francisco.

John D. Whaley for appellant; the Attorney General for respondent.

McKEE, J.—The defendant having been convicted of murder in the first degree, and sentenced to imprisonment for life, appeals from the judgment, and an order denying a motion for a new trial.

1. In impaneling the trial jury the court allowed certain challenges, taken by the district attorney, to two of the panel of jurors, for implied bias, upon the ground that each of them entertained such conscientious scruples as would preclude him from finding the defendant guilty. The challenges were made upon the testimony of the jurors given during their examination as to their qualifications to sit as trial jurors. When taken, the defendant's counsel "denied the facts"; and the court, upon the testimony of the jurors previously given—none other having been offered after the denial of the facts—allowed the challenges and excluded the jurors. It is contended that the allowance of the challenges was erroneous, because there was no trial of the issue raised by the denial, and because the testimony of the jurors was insufficient. Section 1078 of the Penal Code provides: "If the facts are denied, the challenge must be tried by the court." But there was substantially a trial. The testimony of the jurors was taken before the judge himself, and the question raised by the denial of the defendant was submitted to the court for decision upon that testimony; for, after the denial of the facts, the defendant did not re-examine the jurors, nor offer any additional testimony; and as the question was practically submitted, by counsel for the people and for the defendant, upon the testimony before the court, the court had the right to, as it did, decide it without requiring the jurors to repeat themselves. The decision rendered was sustained by the evidence; for one of the jurors answered, substantially, that in a clear case of willful and deliberate murder he would be, as a juror, in favor of imprisonment for life, but opposed to hanging. And the other, that he had to a "certain extent" conscientious scruples against finding

a man guilty of a crime for which he would be hung. A person summoned as a juror, who entertains such conscientious opinions, must neither be permitted nor compelled to serve as a juror: Pen. Code, sec. 1074.

2. At the trial of the case the court admitted in evidence, as dying declarations, certain statements of the deceased. The statements were that the defendant, who was taken after his arrest to the bedside of the wounded man, was "the man who cut him with a knife, and that he had no cause for it whatever." It is contended that it was error to admit these statements, because it was not proved they were made under a sense of impending death. Dying declarations are inadmissible unless the declarant believed that death was impending. If at the time of the declarations he has any expectation or hope of recovery, however slight it may have been, and though death ensued soon afterward, the declarations are inadmissible: 1 Greenleaf on Evidence, 184. Under that rule, we held, in Hodgdon's Case, 55 Cal. 72, 36 Am. Rep. 30, certain dying declarations inadmissible, because, while the declarant, at the time of making the declarations, expressed herself as believing she would die, yet she also expressed the thought that she might recover, and therefore she had not abandoned the hope of recovery. In Taylor's Case, 59 Cal. 640, there was nothing in the circumstances of the case, or the expressions of the declarant, to indicate that he thought death was inevitable.

In the case in hand the evidence showed that the deceased died on the 23d of May, 1883, of traumatic peritonitis, caused by a knife-wound inflicted by the defendant on the 20th of May, 1883. After receiving the wound, the deceased was taken to the receiving hospital. He suffered great pain. His medical attendant testified that such a wound was invariably fatal. And, although encouraged by those around him, the wounded man frequently expressed himself as follows: "I have got my death wound. I think I am going to die. I believe I am going to die from the wound"; and he requested his wife to be sent for so that he might at once settle his affairs. His wife came, and was with him every day till he died; and she testified that "he said he was afraid he would never recover." The circumstances of the dangerous nature and character of the wound, the physical condition of the wounded

man as shown by his sufferings, and of his mental condition, as indicated by his expressions, justified the inference drawn by the court that the declarant was conscious of impending death at the time of the declarations. The declarations were properly admitted in evidence: People v. Sanchez, 24 Cal. 17. Besides, the declarations were made in the presence of the defendant, who did not deny them, and the defendant had, before he was brought into the presence of the wounded man, confessed the truth of the fact contained in the declarations. The confession of the defendant and the declarations of the wounded man, made in the presence of the defendant, were made within two hours after the stabbing, and both were admissible as part of the res gestae. The confession was this: "I don't deny I cut the son of a bitch to kill him, and if he ain't dead, I hope he will die." It was objected that this confession was extorted from the defendant by force and threats, but the evidence shows it was voluntarily made at the time of his arrest, and before the officer had time to speak to him upon the subject, and when he did make it the officer cautioned him about volunteering any statement of that kind, as it would have to be repeated at his trial, to which he answered "he did not care." There was, therefore, no error in admitting the confession and declarations.

3. Nor was there any error in admitting evidence tending to prove that the defendant, immediately after making the confession, became turbulent in his conduct, resisted the officer, and refused to deliver up the knife with which he had done the stabbing for which he was arrested. The conduct, acts, and expressions of a person accused of crime, at the time of his arrest, are always admissible in evidence against him.

4. The questions asked by the district attorney on cross-examination of the defendant, who testified as a witness in his own behalf, were proper. Former conviction of a felony may be shown by the examination of the witness, or the record of the judgment: Code Civ. Proc., sec. 2051.

5. In the charge of the court we find no prejudicial error. The instructions are not contradictory. The law of murder and malice was correctly expounded in the language of sections 187, 188, Penal Code; and the court added: "In its legal sense malice does not mean mere hatred and ill-will, but

denotes an intent to do an unlawful act, without legal justification or excuse. . . . . When an unlawful killing is proved, malice will be presumed, and the burden of proof is on the defendant to show the absence or want of malice.'' Exception was taken to the last clause of the instruction. But the code (subdivisions 2, 3, section 1963, Code of Civil Procedure) declares that a person intends the ordinary consequence of his voluntary act, and that an unlawful act was done with an unlawful intent. And the effect of these statutory rules of evidence is that when the act is proved to have been done by the accused, if it be an act in itself unlawful, the law in the first instance presumes it to have been intended, and the proof of justification or excuse lies on the defendant to overcome this legal and natural presumption: People v. Harris, 29 Cal. 682.

6. The instructions to the jury upon the subject of the dying declarations, which had been admitted in evidence, were favorable to the defendant, and were properly given. After the admission of such evidence the question of its credibility remains for the consideration of the jury. It is their province to weigh all the circumstances under which the declarations were made, including those already proved to the judge, and to give to the declarations such credit as, upon the whole, they may think them entitled to: 1 Greenleaf on Evidence, pp. 185, 186.

Judgment and order affirmed.

I concur: Ross, J.

McKINSTRY, J., Concurring.—I concur in the judgment.

1. Appellant contends the court erred in allowing a challenge on the ground of implied bias to certain jurors. But no exception can be taken to the decision of the court allowing a challenge: Pen. Code, sec. 1170.

2. Appellant urges it was error on the part of the judge below to deny defendant's motion to examine other witnesses as to the condition of deceased at the time certain declarations, alleged to be dying declarations, were made. But the judge, being satisfied that the declarations were made when deceased was under a sense of impending death, was not required, upon the mere suggestion of defendant's counsel that other persons might know something of the condition

of deceased, to postpone further proceedings until they could be brought in for examination. If defendant had offered to prove by any named witness that deceased, when he made the declarations, was not or did not believe himself in extremis, the point now made would have been presented by the record.

3. It is insisted the evidence did not show that deceased had abandoned every hope of recovery when the declarations were made. But the evidence sustains the finding of the court in that regard.

4. The court did not err in admitting evidence of the fact that defendant remained silent when deceased said "that is the man who cut me," for his silence was some evidence that the statement was true. Nor in admitting evidence of defendant's declarations when he was arrested; the fact that he was under arrest not necessarily proving that the declarations were involuntary. Nor in permitting the prosecution to put in evidence the pocket-knife of defendant, even if it be admitted it was taken from him by force.

5. Appellant claims error in that the court overruled his objections to questions put to the witness James Brown, and in "compelling" the witness to answer them. The witness was asked, in effect, if he had been convicted of certain felonies under other names than Brown. The objections were that the evidence called for was incompetent, irrelevant, and immaterial. The witness did not decline to answer on the ground that his testimony would tend to degrade him, but answered voluntarily. The evidence was not irrelevant nor immaterial. It was not incompetent: Code Civ. Proc., sec. 2051.

6. There was no material error in the portions of the judge's charge referred to in appellant's points. Conceding the court erred, after having held that the deceased was thoroughly convinced of his impending dissolution, and admitted the declarations, in permitting the jury to reject the declarations, if they should believe deceased did not think he was dying, the error could not have prejudiced defendant, since the declarations were adverse to him.