## JOHN CASEY v. THE STATE.

### No. 3442.   Decided May 8, 1907.

**1.—Murder in Second Degree—Continuance—Materiality of Testimony.**

Where upon trial for murder, the testimony of the absent witnesses would have been material as showing the previous threat of deceased, and tended to corroborate defendant's evidence as to deceased being the aggressor in the difficulty, the continuance should have been granted or a new trial given, notwithstanding the diligence of defendant was not complete.

**2.—Same—Charge of Court—Justification—Mitigation—Burden.**

Where upon trial for murder the evidence of the State was wholly circumstantial to overcome defendant's positive testimony that he acted in self-defense, it was error to charge the jury that if they believed that there had been adduced no evidence which tended to establish self-defense, or manslaughter, then there had been adduced no evidence which tended to establish any justification, excuse or mitigation as explained in said charge. The burden was on the State to show that defendant was guilty of the offense charged.

**3.—Same—Misconduct of Jury—Former Conviction.**

Where upon trial for murder the jury in their retirement discussed the former verdict and the term of punishment defendant received at the hands of a former jury, the conviction must be set aside; although the jury gave the defendant a lower term of years than in the former conviction, had agreed to find defendant guilty when they discussed his punishment, and claimed that such discussion did not influence them.

Appeal from the District Court of Franklin.   Tried below before the Hon. P. A. Turner.

Appeal from a conviction of murder in the second degree; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*R. T. Wilkinson, Ralston & Ward, R. E. Davenport,* for appellant.— On question of misconduct of jury: Lankster v. State, 65 S. W. Rep., 373; Horn v. State, 17 Texas Ct. Rep., 272; Hardiman v. State, 53 S. W. Rep., 121; Mitchell v. State, 36 Texas Crim. Rep., 278; Gann v. State, 59 S. W. Rep., 897; Ellis v. State, 33 Texas Crim. Rep., 508.

*F. J. McCord,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of murder in the second degree, and his punishment assessed at seven years confinement in the penitentiary; and prosecutes this appeal.

This is the second appeal of this case, it having been reversed at a former term of this court. See Casey v. State, 14 Texas Ct. Rep., 818.

A summary of the facts shows that appellant was a farmer, and deceased was one of his tenants; both lived on the same farm, and in the same house, sleeping in separate beds in the same room. There were no eye-witnesses to the homicide except appellant, who testified in his own behalf. Appellant's theory is self-defense, and is predicated on his evidence to the effect that deceased and himself had been at outs for several days, deceased refusing to speak to him. On the night of the homicide appellant states that deceased was sitting on the steps of the gallery, and he (appellant) went out on the gallery to get a drink out of the bucket of water there, and while there accosted deceased, remarking, "Did you say you was going to haul cotton to-morrow," and deceased said "No;" spoke sort of sharp, to which appellant replied, "I understood you to say you was going to haul," and deceased said, "No I never." Appellant said, "What you mad at me about?" to which deceased replied, "You have been running around, inquiring into my business." Appellant replied, "I haven't; who told you;" deceased said, "Tobe Lee." Appellant replied, "I haven't told Tobe Lee anything. I did ask Tobe if he wasn't down at Walter's the other morning when you come up there, and he said he wasn't." Then deceased said, "I sent for you to come and help fix a fence and you wouldn't do it;" appellant replied, "My arm is sore and I couldn't fix the fence." At this deceased said, "God damn you, why didn't you tell me your arm was sore?" and deceased jumped up from where he was sitting and started at appellant. Appellant says he was then right against the door facing, and just run inside and grabbed the gun down, which was in the rack by the door, and told deceased to hold up, or stand back, or he would shoot him, and as quick as he jerked the gun he fired; that at the time he fired deceased was reaching with his left hand and had the knife in his right hand, stating at the time, "God damn you, I will cut your God damn throat" or "head off." It was shown that the shot struck deceased in the left breast just above the heart. Some blood was found on the gallery, and on the steps, and leading from the steps to some ten or fifteen steps to where the body of deceased was found near the gate, and there was testimony showing

that when deceased's body was found a knife was found in his hand, the hand relaxed, not grasping the knife. The State relied for a conviction on circumstances rebutting the theory of self-defense. Some of the circumstances consisted in statements made by appellant to others regarding the homicide. Among others, Snead testified that appellant told him that he (appellant) ought not have gone out on the gallery when he did, but he really thought Harrison had gone to bed, but when he went out Harrison was sitting in the door with his feet on the second step, and he asked Harrison what he was mad with him about, and a conversation ensued between him and deceased, about as appellant stated it, except that this witness says that appellant's statement showed that he cursed deceased first, and appellant then said, "God damn you, I will shoot your God damn head off," and Harrison said, "Shoot, damn you," and Casey said Harrison got up and started to turn around, then he grabbed the gun and shot deceased. There is also some testimony with reference to blood that was found on the gallery, and some expert testimony with regard to the distance a man could go after being shot as deceased was, and as to whether he could grasp a knife and carry it the distance he did after being shot, the suggestion on the part of the State, being that the knife must have been placed in deceased's hand after he was shot. This is a sufficient statement of the evidence to discuss the questions assigned.

Appellant made a motion for continuance predicated on the testimony of the absent witnesses Mrs. Laura Casey and Sam Casey. It appears that these witnesses were related to appellant, and lived with him at the time of the homicide. They were present at the former trial of the case. The former case was reversed and mandate received sometime in January, 1906. At the May term a continuance was had by appellant on account of the absence of Laura Casey. This trial occurred on the 27th of November, 1906. No diligence was used for these witnesses until the 3d of October, 1906, when process was issued for them to McLennan County, where it was said appellant had learned they had gone, but they were not found there, and process was returned not served. Process was also issued subsequently and before the trial to Navarro and Angelina Counties, and returned not served. It was shown that appellant sent the sheriff of Franklin County to McLennan County to get trace of where the witnesses had gone; that the sheriff went to McLennan County and found that the witnesses had been there but they had left, but he could not find where they had gone to; that the sheriff left a reward of $10 with the sheriff of McLennan County to find said witnesses. As to the materiality of the witness Laura Casey, it is shown that she would testify that she was in one of the rooms of the house, and as soon as she heard the gun fire she went out on the gallery and asked appellant why he did it, and appellant stated that deceased Harrison was coming on him with a knife when he shot him. By Sam Casey it was proposed to be shown that a few days before the killing defendant got a cotton sack, and started down in

the field to help the deceased pick cotton, but something turned up that he did not go, and the deceased asked said witness where he (defendant) had started on the occasion, and witness told him that he had started down to help him pick cotton, to which deceased replied, "It was a damn good thing he did not come, for if he had he would have broken his neck with a club," and that he told the defendant of this before the killing. We take it that the testimony of the first witness would have been res gestæ, and was material testimony corroborating appellant's evidence. We also believe the testimony of Sam Casey would have been material as showing the previous threat of deceased, and tending to corroborate appellant's evidence as to deceased being the aggressor in the difficulty. Notwithstanding the diligence of appellant was not complete, in that he did not begin his diligence in time, still we believe that the court should have continued the case, or have granted a new trial, after conviction on account of the absence of said witnesses.

Appellant reserved a number of bills of exception to the admission and rejection of testimony, but as presented we do not regard any of said bills as presenting material error.

Appellant also complains of the charge of the court with reference to murder in the second degree in explaining what he meant by justification, excuse or mitigation. Said charge is as follows: "If you believe that there has been adduced no evidence which tends to establish self-defense, or which tends to establish manslaughter, as the law of self-defense and manslaughter is defined and explained to you in this charge hereafter, then there has been adduced no evidence which tends to establish any justification, excuse or mitigation, as used in above charge." The contention of appellant here is that the charge in question put the burden of proof upon appellant inasmuch as it informed the jury in effect that he must introduce evidence tending to establish his self-defense or manslaughter, as the case might be, when, as he contends, the burden was on the State throughout to establish a case of murder in the second degree before the State could claim a conviction for that offense, and if manslaughter or self-defense was in the case, from a want of testimony, this would be sufficient to give him the benefit of manslaughter or self-defense. Under the peculiar circumstances of this case the charge may be subject to the criticism of appellant, inasmuch as the State's case consists wholly of circumstances to overcome appellant's positive testimony that he acted in self-defense. Before the State was authorized to convict appellant of any offense, the burden was on the State to show that appellant was guilty of such offense, and the charge should have accorded him the full benefit of testimony tending to show his guilt, or the lack of testimony tending to show his guilt.

Appellant further contends that this case should be reversed because of the misconduct of the jury in referring to and discussing the former conviction of appellant, and the term of punishment he received at the hands of the former jury. In the motion for a new trial he made this issue before the court, which was traversed by the State. Appel-

lant showed by two witnesses Beacon and Majors that they were on the jury which tried the case, and that after they had agreed on the guilt of appellant of murder in the second degree, but before they had fixed his term of punishment, the matter of his former conviction, and number of years he received at the hands of the jury, was brought up by one or the other of said jurors. Nine other jurors were produced; some of them testified that they heard the matter of former conviction and number of years received by appellant mentioned, but this was after they had agreed on the verdict. Article 823, Code Criminal Procedure, has been construed by this court in a number of cases, and a number of cases have been reversed because of the misconduct of the jury in discussing former verdict, and the rule has been laid down that where there was a discussion of a former verdict and former punishment, before the jury agreed on the term of years, and under the circumstances this discussion might have had some influence on the jury, that the case would be reversed. See Horn v. State, 17 Texas Crim. App., 271, and authorities there referred to. It has also been held that a mere reference to former verdict, and no further discussion thereof, even before the jury agreed on the number of years, would not be cause for reversal. See Blaines v. State, 66 S. W. Rep., 847, and Gaines v. State, 8 Texas Ct. Rep., 616. Evidently here two of the jurors did discuss the former conviction in the case before any agreement as to punishment. It does not seem, however, to have had any particular influence with them, or other members of the jury, as they gave appellant a less term than the former verdict. However, we believe the rule which inhibits any sort of discussion by members of the jury in the jury-room of the former verdict in the case should be rigidly adhered to, and we are not prepared to say, notwithstanding the jury agreed on a lower term of years than was given in the former verdict, that the fact of former conviction may have had some influence with some members of the jury.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*