## Ira W. McDougal v. The State.

### No. 4353.   Decided April 18, 1917.

**1.—Murder—Husband and Wife—Opinion of Witness—Cross-examination.**

Upon trial of murder where defendant's wife had testified for the defendant as an eyewitness to the difficulty to show that the deceased was the aggressor, it was reversible error to permit the State, on her cross-examination over the objection of the defendant, to show that shortly after the killing she stated that her husband killed deceased because he sued him, etc., as this was not a shorthand rendering of the facts, but an opinion of the witness, if it occurred, which she denied; and the cross-examination of the wife, not germane to her direct examination.   Following Marsh v. State, 54 Texas Crim. Rep., 144, and other cases.   Prendergast, Judge, dissenting.

**2.—Same—Misconduct of Jury—Reference to Former Conviction—Testimony Outside of the Record.**

Where, upon trial of murder, the bill of exceptions disclosed that the jury after its retirement to deliberate upon the case, not only received other testimony but received illegal testimony, damaging to the defendant; and, further, that the former conviction of defendant was alluded to by the jury and used against him in a manner inhibited by the statutes, the same was reversible error. Following Lankster v. State, 43 Texas Crim. Rep., 298, and other cases.   See articles 837 and 843, Code Criminal Procedure.   Prendergast, Judge, dissenting.

Appeal from the District Court of Smith.   Tried below before the Hon. R. Anderson.

Appeal from a conviction of murder; penalty, nineteen years imprisonment in the penitentiary.

The opinion states the case.

*Simpson, Lassiter & Gentry,* for appellant.—On question of cross-examination of defendant's wife:   Hickey v. State, 62 Texas Crim. Rep., 568; Hobbs v. State, 53 Texas Crim. Rep., 71, and cases cited in opinion.

On question of opinion of witness:   Drake v. State, 29 Texas Crim. App., 265, and cases cited in opinion.

On question of misconduct of jury:   Casey v. State, 51 Texas Crim. Rep., 433; Clements v. State, 69 Texas Crim. Rep., 369, and cases cited in opinion.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, Judge.—This appeal is from a conviction for the offense of murder with punishment assessed at nineteen years confinement in the State penitentiary.

That appellant killed the deceased was a conceded fact, and his excuse was self-defense.   This issue as well as manslaughter and provoking the difficulty were submitted to the jury.

Appellant's wife was an eyewitness and testified to facts tending to show that the deceased was the aggressor, or at least at the time of the homicide the deceased was attacking appellant with a knife with

the declaration that he intended to kill him. On cross-examination it appeared that the appellant's wife had remained in Lindale, where the homicide took place, some little time, about a half hour, after the homicide and then started for her home, four miles distant, and traveled in a wagon with her son, and while so traveling she met Isom Vickery and his wife traveling toward Lindale. The State's counsel asked her if on this occasion when her wagon was passing the vehicle in which Isom Vickery was traveling the latter didn't say to her: "Who killed him?" and if she did not reply, saying: "Ira killed your papa because he sued him. I tried to keep him from it, but I couldn't do it." Objection was made to this testimony on the ground that it was not proper cross-examination of the wife, not germane to the direct examination and called for an opinion of the witness. The objection was overruled, and Mrs. McDougal having denied the conversation, the State's counsel proved by Isom Vickery and by Mrs. Isom Vickery that the conversation named did occur. This was objected to as hearsay and as undertaking to prove an opinion and conclusion, and as being an inquiry not germane to the direct examination, which objections were overruled, and exception duly reserved.

We do not think that this expression comes within the rule stated in those cases in which it has been held that expressions constituting a shorthand rendition of the facts are admissible though they bear the appearance of a mere opinion. These cases are cited in Branch's Ann. P. C., p. 1036, but they all recognize the law to be that where the statement is a mere opinion, even though in a dying declaration, it can not be admitted in evidence. This is illustrated in Manley v. State, 62 Texas Crim. Rep., 392. The dying declaration in that case contained the following: "I was stabbed by one of the soldiers at the fair grounds today, and without any word or act of mine that could be regarded as hostile or a provocation." The court held that the words "that could be regarded as hostile or a provocation" were the opinion or conclusion of the dying man and inadmissible. In Sorrell v. State, 74 Texas Crim. Rep., 505, 169 S. W. Rep., 299, the dying declaration contained the words, "He was shot down like John Ross." This was declared objectionable because an opinion. The same principle was adhered to in Drake v. State, 65 Texas Crim. Rep., 282, 143 S. W. Rep., 1157, where the quotation from the dying declaration was that a coward shot him. In Bateson v. State, 46 Texas Crim. Rep., 34, the dying declaration contained the words: "They murdered me without cause." This court held that this statement should have been excluded. The rule is stated in Medina v. State, 63 S. W. Rep., 332, as follows: "A dying declaration is admissible to show all the facts immediately connected with the homicide to which a witness, were he present, could testify. This would exclude narratives of past transactions and opinions or mere conclusions by declarant," citing Roberts v. State, 5 Texas Crim. App., 141; Warren v. State, 9 Texas Crim. App., 619; 1 Greenl. Ev., sec. 159; Boyle v. State, 5 N. E. Rep., 203; People v. Abbott, 4 Pac. Rep., 769.

In Williams v. State, 40 Texas Crim. Rep., 565, the dying declaration said: "When they came in my office I treated them perfectly gentlemanly.' They added insult after insult." The admission of this was held error.

The fact that where the defendant uses his wife as a witness the State may conduct a cross-examination germane to the direct examination is not in question. That is settled by the decisions of this State. Branch's Ann. P. C., sec. 152, p. 86. From the same author, page 87, we quote the limitation or qualification upon this rule:

"It is error to permit the State to go into *new matter* on cross-examination of the wife of defendant either for the purpose of impeachment or to draw out circumstances or statements adverse to defendant. Cross-examination is not a device by which the State is entitled to lay predicates as to matters about which the wife of defendant could not be cross-examined or contradicted, or to get before the jury her opinions of defendant's guilt, or her apprehensions of danger, or her hearsay statements as to new matter. (Citing cases.)

"If the State goes into *new* matter on cross-examination, the witness becomes, for the time being, a State witness. The State is not entitled on cross-examination of the wife of the defendant to go into *new* matter, and thereby make the wife of defendant a witness for the State against her husband. The wife of the defendant may be cross-examined by the State only as to such matters as naturally spring out of and appertain to her testimony given on her direct examination." (Citing cases.)

The subject here emphasized is, that the opinion as to the guilt or innocence of a defendant on trial or to the cause of the homicide is not admissible in evidence. In Marsh v. State, 54 Texas Crim. Rep., 144, the wife of the appellant while on the stand as a witness for him was, on cross-examination, asked by the prosecution if she had not said to Will Brown on an occasion named that it was nothing in the world that caused the trouble except a foolish remark of Kathleen Adams. Upon her denying this statement, Will Brown was put upon the stand for the State and testified that she made it. His testimony was limited in the court's charge to impeaching purposes. Judge Ramsey, delivering the unanimous opinion of the court, held this proceeding error. We quote from him, as follows: "It formed no part of the transaction or the conversation or matter inquired of from Mrs. Marsh on her original examination. It wholly related to another transaction subsequent to the killing, and was not receivable either for the purpose of impeachment or as a circumstance adverse to appellant. Again, we think the testimony was objectionable in that it called for the opinion of the witness as to the killing. For full discussion of this matter, see Richards v. State, 53 Texas Crim. Rep., 400, 110 S. W. Rep., 432; Jones v. State, 38 Texas Crim. Rep., 87, 40 S. W. Rep., 807, 41 S. W. Rep., 638, 70 Am. St. Rep., 719; Messer v. State, 43 Texas Crim. Rep., 97, 63 S. W. Rep., 643; Washington v. State, 17 Texas Crim.

App., 197; Hoover v. State, 35 Texas Crim. Rep., 342, 33 S. W. Rep., 337; Gaines v. State, 38 Texas Crim. Rep., 202, 42 S. W. Rep., 385; Creamer v. State, 34 Texas, 173; Greenwood v. State, 35 Texas, 587; Merritt v. State, 39 Texas Crim. Rep., 70, 45 S. W. Rep, 21; Johnson v. State, 28 Texas Crim. App., 17, 11 S. W. Rep., 667; Hamilton v. State, 36 Texas Crim. Rep., 372, 37 S. W. Rep., 431; Owen v. State, 7 Texas Crim. App., 329; Red v. State, 39 Texas Crim. Rep., 414; Bluman v. State, 33 Texas Crim. Rep., 43, 21 S. W. Rep., 1027." In Taylor v. State, 74 Texas Crim. Rep., 3, 167 S. W. Rep., 56, the majority of the court expressed the opinion that Marsh v. State, supra, was not sound and that it should be overruled so far as it was in conflict with Taylor v. State, supra, and the decisions there cited. The decisions cited are those which establish the rule that a wife may be cross-examined on matters brought out on her direct examination. In Taylor v. State it was not contended that the testimony of the wife constituted her opinion, but the difference between the majority of this court in writing that opinion and Judge Ramsey in writing the opinion in the Marsh case, supra, involved the extent to which cross-examination of the wife might go. In substance, as we understand it, the correctness of the rule as quoted from Branch's Ann. P. C. above was not involved, but its application only. We, therefore, assume that that part of Marsh v. State in which Judge Ramsey holds that the wife's opinion as to the cause of the homicide is not admissible, is not in conflict either with Taylor v. State or the authorities therein cited. In Drake v. State, 29 Texas Crim. App., 265, this court in an opinion by Judge Willson, on rehearing, disposed of substantially the same character of testimony in the following language: "It did not involve *facts* in evidence but merely the conclusion of the witness. It was not the statement of a *fact* but of a conclusion—a mere opinion or belief of the witness. It was, therefore, a statement *collateral* to the issue as we understand the authorities upon this subject. In addition to the citations of authorities in our former opinion bearing upon this question, we refer to Wharton's Criminal Evidence, section 482; 1 Wharton on Evidence, section 551, and 1 Greenleaf's Evidence, section 449. As to the second proposition, we held and still hold that the statement inquired about involved the opinion merely of the witness. A statement of opinion merely can not be used to impeach a witness, except when opinion is an issue or where the opinion stated goes to show bias of the witness. Whart. Crim. Ev., sec. 482; 1 Greenl. Ev., sec. 449; Holmes v. Barber, 18 Barb., 420." In Watson v. State, 50 Texas Crim. Rep., 171, 95 S. W. Rep., 115, a witness who had testified to facts showing self-defense was impeached by showing that he had stated that defendant shot deceased for nothing. This was held error on the ground that it was proving the opinion of the witness. In Woodward v. State, 50 Texas Crim. Rep., 294, 95 S. W. Rep., 502, the same principle is adhered to. Likewise in Hobbs v. State, 53 Texas Crim. Rep., 71, 112 S. W. Rep., 308.

The cases cited by the Assistant Attorney General are not in conflict with the case of Marsh v. State, supra, in so far as it declares the opinion of the witness inadmissible and declares the statement quoted in that case to have been an opinion. The statement imputed to Mrs. McDougal to the effect that her husband killed deceased "because he sued him," does not purport to relate any fact but only a conclusion supposed to have been drawn by her from the facts obtained by her from an undisclosed source. It touched a vital issue: the cause of the homicide. That appellant killed the deceased was not in question; the reason for it was the subject of the trial. The evidence complained of should have been excluded.

Appellant asserts that there was error in the refusal of the trial court to grant a new trial on the ground that the jury after its retirement discussed and used against him the fact that he had previously been convicted in this case and his punishment assessed at twenty years confinement in the penitentiary. It appears that in developing the case reference was made to the fact that the defendant had been previously tried, but there was no reference or evidence showing how it resulted. On the first night that the jury were out they were of the opinion that appellant was guilty of some degree of homicide, and they balloted a number of times upon the amount of his punishment. Their views varied, some insisting that the offense was manslaughter and the punishment should be two years; others insisted upon five and others upon ten years and others for various numbers of years going up to ninety-nine. They reached that night a stage in which ten voted for fifteen years as the punishment and two against it. There is evidence that one of the men who was for the highest punishment began the discussion or statements relating to the former conviction. One of the jurors testified as follows: "Just before the ten and fifteen-year men agreed on nineteen years it seemed that we had come to a halt, when the other two would not come to them, and we quit, and several went into another room and went to sleep, and a little after 3 o'clock one of the jurors roused up the balance and wanted an agreement." As to its terms he replied: "Well, in the former trial the jury gave McDougal twenty years, and I think that the anguish that he has undergone for the past year, we will just disregard that year and give him nineteen years." The juror testifying said that he told him he didn't think they had a right to consider the former sentence but finally told him that they would get the men together, and they did get the other eight, including himself, and arrived at a verdict of nineteen years. The jurors generally stated that they were not influenced by the fact brought to their knowledge of the prior conviction or the discussion of it.

Article 837, C. C. P., prescribes that "new trials in cases of felony shall be granted where the jury, after having retired to deliberate upon a case have received other testimony."

In Mitchell v. State, 36 Texas Crim. Rep., 278, Hurt, Presiding

Judge, delivering the opinion of this court, construing this statute, says: "It would appear from this that if the jury received other testimony after having retired to deliberate upon a case, a new trial is mandatory. Certainly it would be so where the testimony is of a material character, and it makes no difference whether the jury received this testimony from one of their number or from others."

In Lankster v. State, 43 Texas Crim. Rep., 298, Henderson, Judge, delivering the opinion of this court reversing the judgment assessing the penalty at seven years confinement in the penitentiary because during their deliberations one of the jurors mentioned in the presence of his fellows the fact that appellant had been previously convicted in the same case and his punishment fixed at twenty-five years in the penitentiary on one trial and fifteen years on another, said:

"The question thus presents itself: Was this such misconduct on the part of the jury as to require a reversal of this case? We are aware there are some cases wherein we have stated that the mere allusion to the failure of defendant to testify is not a ground for reversal. But in those cases it will be found that State's counsel was provoked in what he stated by remarks of defendant's counsel. Campbell v. State, 35 Texas Crim. Rep., 160; Brantley v. State, 42 Texas Crim. Rep., 293. In Morrison v. State, 39 Texas Crim. Rep., 519, which has been referred to, we do not understand that any question as to the misconduct of the jury was before the court. The case was reversed on other grounds, and it was held in that case that the affidavit seeking to impeach the verdict of the jury for misconduct was too general. . . . The former convictions were alluded to and discussed. Obviously, as men generally act from motive, this matter was discussed by someone for a purpose; and the suggestion that former juries had not only found appellant guilty, but had fixed a heavy punishment to his offense, would have more or less moral weight with the jury. It was calculated to strengthen the weak-kneed, and to increase the ardor of those who were already in favor of the greatest number of years. But we do not believe, in a matter of this sort, we are authorized to speculate as to possible injury that may have accrued to appellant. The jury were guilty of misconduct in referring to the former convictions, and the bare fact that this misconduct was of a character calculated to injuriously affect him is enough."

In Tutt v. State, 49 Texas Crim. Rep., 202, 91 S. W. Rep., 584; Morawitz v. State, 49 Texas Crim. Rep., 366, 91 S. W. Rep., 227; Hardeman v. State, 53 S. W. Rep., 121; Horne v. State, 50 Texas Crim. Rep., 404; Clements v. State, 69 Texas Crim. Rep., 369, 153 S. W. Rep., 1137, and Blocker v. State, 61 S. W. Rep., 391, there were reversals because the jury after retirement and before verdict had received from one of their number knowledge of the prior conviction of the defendant or his codefendant, each of them holding that such knowledge was receiving evidence within the terms of the statute and that harmful evidence was received, rendering it imperative that a new trial be

granted unless the absence of injury was shown. In most of these cases the punishment assessed upon the previous trial was greater than that in the case passed upon, and in all of them there was testimony by the jurors to the effect that they were not influenced by the knowledge thus received.

Touching this character of testimony, we quote from the cases of Lankster v. State, supra, and Mitchell v. State, supra, as follows: "The jury say that this discussion in nowise influenced them in arriving at their verdict. The affidavits of jurors who are guilty of misconduct to the effect that they were not prejudiced by what they did is of little weight. As was said in Mitchell v. State, 36 Texas Crim. Rep., 278: 'Such an affidavit is to be expected from jurors seeking to justify themselves for their own misconduct, and to escape a responsibility imposed upon them by their oaths, which an admission that they were otherwise influenced would entail.' "

There are cases passing upon article 837, subdivision 7, holding that a mere incidental mention of the former conviction will not necessarily result in reversal. Among them are Bain v. State, 43 Texas Crim. Rep., 490, where the complaint relating to a reference by the State's attorney to the former conviction, the court held there was no such reference; Salazar v. State, 55 Texas Crim. Rep., 307, where there was no discussion of the former conviction but a bare mention of it only; Coffman v. State, 73 Texas Crim. Rep., 295, where a witness during the trial volunteered a statement of the previous conviction and the court promptly reprimanded the witness and withdrew the matter from the jury, and where it appeared that there was no discussion of the previous conviction by the jury and it further appeared that the jury knew of it in advance; Smith v. State, 52 Texas Crim. Rep., 344, in which there was casual, incidental allusion to the former conviction but no use of it, the court stating the true rule to be "that a verdict ought not to be set aside for every incidental and casual mention of a former conviction, unless the court may fairly and reasonably see in the light of all the circumstances that such reference or discussion *did or might have prejudiced appellant's case.*" Arnwine v. State, 54 Texas Crim. Rep., 213, was one in which the jury knew of the prior conviction before it was mentioned in the jury room. It was discussed, however, and there was a dissenting opinion holding that a reversal was required, and with this opinion we agree. An examination of each of the cases in which there has been an affirmance will disclose facts different from those involved in the present case. In each of them, except Arnwine v. State, supra, the evidence demonstrated an absence of the injury.

The statute has also been given a mandatory effect in its application to the receipt of harmful testimony other than that of prior conviction. Thus, in McWilliams v. State, 32 Texas Crim. Rep., 269, Hurt, Presiding Judge, writing the opinion reversing for the receipt of such testimony, says: "If the jury after having retired to deliberate upon the

case shall receive other testimony, a new trial shall be granted, and the additional testimony being against the accused, we will not stop to inquire as to its effect upon the jury or jurors." And in Tate v. State, reversing on a similar ground, the court says: "We are left in the dark as to the extent of the discussion of this matter in the jury room, nor are we informed that it had any particular effect as against the defendant, but we are constrained to believe that, as the matter appears upon the record, it must have been to his detriment." The court further says that to permit the testimony given in the jury room would be to deprive the defendant of the right of cross-examination and violative of the fundamental principles underlying the right of trial by jury. Other cases in which there have been reversals upon the ground of a reference to or proof of the prior conviction are Sorrell v. State, 74 Texas Crim. Rep., 505, 169 S. W. Rep., 299; Eads v. State, 74 Texas Crim. Rep., 628, 170 S. W. Rep., 145; Kirksey v. State, 58 Texas Crim. Rep., 188; May v. State, 59 Texas Crim. Rep., 141; Clements case, 69 Texas Crim. Rep., 369, 153 S. W. Rep., 1137; Hughes v. State, 44 Texas Crim. Rep., 296.

Another statute (art. 843, C. C. P.) provides that former convictions shall be regarded as no presumption of guilt, nor shall it be alluded to in the argument. The violation of this statute has been uniformly held reversible error. Davis v. State, 54 Texas Crim. Rep., 236; May v. State, 59 Texas Crim. Rep., 141; Wyatt v. State, 58 Texas Crim. Rep., 115. In the analogous case of McCampbell v. State, 37 Texas Crim. Rep., 607, relating to the violation of the statute prohibiting the separation of the jury without the consent of the court, there was held a presumption of error, the court saying: "The accused is not alone interested in this matter. The State has an interest in the life and liberty of the citizen. The State has an interest in the purity of the trial by jury. A separation of the jury may result in great injustice to the State as well as the accused, not only in the particular case but as establishing a bad precedent." And in Early v. State, 51 Texas Crim. Rep., 382, it was held that where a juror talked over the telephone, violative of a statute which prohibited jurors from communicating with other persons without the consent of the court, the presumption of injury would be indulged, at least to the degree that the State would have the burden of showing that there was no injury. Many reversals have been ordered by reason of the failure to observe the rule declaring that defendant's failure to testify shall not be used against him and for the violation of other statutory regulations.

The statute, the violation of which is complained of in this case, is one which expressly directs that a new trial *shall be granted* where the jury after retirement receives other testimony. The Constitution guarantees a public trial by an impartial jury and that the accused shall be confronted with the witnesses against him; and one of the provisions of the code is that one is disqualified as a juror who is a

witness in the case. A juror who knows damaging facts against the appellant should disclose them and disqualify himself upon the ground that he is a witness, and failing to do so and disclosing them to the jury after the retirement can hardly be classed as an impartial juror. The testimony thus received by the jury in its retirement is contrary to the constitutional requirement giving the defendant the right to be confronted with the witnesses against him. Testimony thus received is under circumstances denying the right of cross-examination declared by our courts as an efficacious test for the discovery of truth. Bell v. State, 2 Texas Crim. App., 215. The statutes mentioned were passed to preserve to parties accused of crime the constitutional rights referred to and to protect the State against a corrupt verdict. The inhibition against the reception by the jury of evidence after its retirement, is against legal evidence as well as illegal evidence, but the facts under discussion here relate to illegal evidence only. If on the trial of the case the State had proved over the objection of appellant the prior conviction, it would have given its sanction to the introduction of the damaging fact which was not admissible. Art. 843, C. C. P.; May v. State, 59 Texas Crim. Rep., 141. If such evidence were introduced and its admission brought before this court for review, it would as stated in the cases mentioned above, be reversible error. Under such circumstances the court would not call the jurors to inquire whether they were influenced by the introduction of this illegal evidence, but the fact that they were influenced by it would be presumed. It seems illogical to place upon the appellant a greater burden where the illegal evidence is received in his absence in opposition to a constitutional right and statutory provision, than would be imposed upon him if the evidence had been introduced in his presence on the trial. Clements v. State, 69 Texas Crim. Rep., 369, 153 S. W. Rep., 1137. It is, therefore, thought that the conclusion reached by this court as recorded in Lankster v. State, 43 Texas Crim. Rep., supra, and Mitchell v. State, 36 Texas Crim. Rep., supra, is correct. These cases bear evidence of careful consideration of the questions involved. They are characterized by no loose expressions, but with cogency of reasoning and clearness of statement declare that, when a jury after it retires to consider its verdict receives other evidence damaging to defendant, the presumption of injury obtains, to rebut which the State must do more than to elicit the conclusions of the jurors that they were not influenced. These cases have been followed. Ysaguirre v. State, 58 S. W. Rep., 1005; Casey v. State, 51 Texas Crim. Rep., 433, 102 S. W. Rep., 725; Horn v. State, 50 Texas Crim. Rep., 404, 97 S. W. Rep., 822; Hughes v. State, 44 Texas Crim. Rep., 296, 70 S. W. Rep., 746; Clements v. State, 69 Texas Crim. Rep., 369, 153 S. W. Rep., 1139.

In our judgment the facts disclosed by the bill of exceptions show that the jury after its retirement to deliberate upon the case not only received other testimony but received illegal testimony damaging to the appellant, and, further, that the former convictions of appellant were

alluded to and used against him in a manner inhibited by article 843, C. C. P. The evidence, in our opinion, does not show that appellant was not injured by these proceedings. In obedience to the command of article 837, C. C. P., appellant's motion for a new trial should have been granted.

Because of the errors pointed out the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, Judge (dissenting).

DAVIDSON, Judge (concurring).—Concurring with Judge Morrow in the reversal of this judgment, I desire to make a few general observations with reference to the introduction of the statements of appellant's wife. The question presented is this: was her statement one of fact or one of conclusion or opinion based on some known facts, or formed and reached without facts? If it was an opinion from either viewpoint it was clearly inadmissible. If her statement was the result or conclusion of statements made to her by her husband, those statements, if admissible, should be produced and not the conclusion from the statements. This, of course, would result in excluding a conclusion or opinion by the witness from such facts, or want of facts. The statement of these propositions ought to be self-evident; that is, if the facts exist, being permissible, should be introduced and not the opinion formed from such facts, or if there be no facts, then the conclusion would not only be an opinion, but would be hearsay, and opinion without foundation. If there are no facts upon which to predicate the opinion, it is equally self-evident that the opinion could not be admissible. The statement imputed to Mrs. McDougal excludes every idea except that of conclusion or opinion. What operated upon her mind to form the conclusion was not stated. Her statement or conclusion was that appellant killed deceased because deceased had sued him. There must have been some fact inducing such conclusion. What was it? Whatever it was was not given nor stated by her, nor was she asked about it. The witness only stated her conclusion. The jury was entitled to know the facts, if any existed, and not the opinion of a witness. If her conclusion was reached by any communication made by her husband, this would come within the interdiction of article 794, C. C. P., prohibiting the use of confidential communications. She could not be even cross-examined about such confidential communications. This would lead necessarily to the proposition that she could not be impeached so far as this phase of the matter is concerned. Confidential communications are placed by our statute as being within the Holy of Holies of the law and the family circle, to be rigidly upheld. The family is the basic foundation of our civilization and government, and no invasion should be permitted as to this sacredness. Any statement made by the husband to the wife can not be used under the terms of

article 795, C. C. P., if incriminating, for this would be making her a witness as to such confidential matters and statements. The question of the testimony of other witnesses as to conversations between husband and wife heard by them is not here discussed, nor is it involved so far as the record shows. The wife is not to be classed as a third party. If her statement was but an opinion or conclusion, it was error to admit the statement. This was conceded and so held in the opinion on the former appeal as found in 79 Texas Crim. Rep., 254, 185 S. W. Rep., 15. But that opinion upheld the ruling of the trial court upon the theory that it was legitimate cross-examination of the wife. In the light of further reflection I am persuaded the former opinion on this question was erroneous, ought not to have been so rendered, and should not now be upheld as the law under the facts of this case. The relation of husband and wife existed. She testified at the instance of her husband to facts and circumstances attending the difficulty which ended in the killing. After the killing she was asked but denied making the statement that her husband killed deceased because deceased had sued her husband. This was not germane to her testimony given as to the incidents of the fatal difficulty, but if it was and was formed on confidential statements to her, still the statute would interdict the use of such statements, much less could her opinion be given. The State could not use such evidence as incriminating. If her husband killed on account of the lawsuit, it would tend to show on his part a motive, and, therefore, would or might impair his defensive theories of the killing. She, as before stated, was not asked about any facts upon which her conclusion was reached or her opinion formed. What these facts were, if any, was not disclosed by the questions or the answers. If her husband made statements they could not be used, and, therefore, for much stronger reasons her opinion or conclusion could not be introduced in evidence: First, because they were confidential communications; second, if she obtained the information from others, her conclusion would be an opinion formed upon hearsay, and, therefore, inadmissible; third, being incriminating, they would be interdicted and inadmissible because coming from the wife; fourth, if legitimate the facts should be given and not her conclusion resulting from the facts, nor her opinion stated from such facts, or information from others; fifth, the propounded question itself assumes as a predicate facts which are not stated and about which inquiry was not made; sixth, the impeaching answer verified the fact that it was but her conclusion or opinion predicated either upon known and undeveloped facts, or upon hearsay statements, even if she made the statement imputed to her; seventh, realizing the solemnity of adjudication of questions, I further realize the more important fact that it is far better to overrule erroneous opinions than to let them stand as a menace to the law and to our statutes and jurisprudence. Such opinions are always dangerous when they lead to erroneous punishment and this from any viewpoint, but when they lead to substituting opinions of witnesses for

the facts and takes away from the jury their province to decide upon the facts, it becomes a menace to the liberty of our people, but when this uncovers the relation of husband and wife and breaks down that sacred bulwark it becomes subversive of the foundation stone of society as well as the law and substitutes opinion of witnesses for facts and jury trials. Even where there is a doubt of facts the doubt should be resolved in favor of the sanctity of the home inhering in the marital relations. Doubt of fact or law favors the presumption of innocence, and this by statute and the fundamental principles pertaining to criminal trials. This is true in regard to the proposition generally stated, but when it goes further and undertakes to invade the home circle and tear down its inherent sanctity, then it becomes more than serious.

I also wish to concur in the reversal of this judgment on account of the misconduct of the jury as shown by the motion for new trial and evidence in support of it, and stated by Judge Morrow in his opinion. In view of the fact he has so fully and conclusively reviewed the question I deem it unnecessary to add anything to what he has said, but simply add this by way of concurrence. He has reached the correct conclusion of the law applicable to the state of case presented by the record, and has rightly decided the case on that question. It is unnecessary for me to say more than the above or write further, but I cite the following as some of the cases fully sustaining Judge Morrow's opinion: Lankster v. State, 43 Texas Crim. Rep., 298; Hughes v. State, 43 Texas Crim. Rep., 511, and citation of authorities in both cases; Hughes v. State, 44 Texas Crim. Rep., 296; Banes v. State, 43 Texas Crim. Rep., 490, at page 498; Tutt v. State, 49 Texas Crim. Rep., 202; Clements v. State, 69 Texas Crim. Rep., 369.

PRENDERGAST, JUDGE (dissenting).—On the first appeal of this case, reported in 79 Texas Crim. Rep., 254, 185 S. W. Rep., 15, precisely the same question was then raised that is now raised on this appeal as to the impeachment of Mrs. McDougal, appellant's wife. The State in cross-examination of her, for the purpose of laying a predicate to impeach her, was properly permitted to ask her if when she met Isom Vickery and his wife (deceased's son and his wife) and he asked, "Who killed papa?" if she did not reply: "Ira killed your papa. He killed him because he sued him, and I done everything I could to keep him from doing it"; and when she denied making such reply, the State was then properly permitted to impeach her by Isom Vickery and his wife, in which they testified that Mrs. McDougal was asked said question and made said reply. All this was for the purpose of laying a predicate to impeach and impeaching her by the testimony of Isom Vickery and his wife. As stated, this identical question was the one decided in this case by this court on the first appeal. It was fully and thoroughly considered both when the original opinion was handed down and again on appellant's motion for a rehearing by this full court as then constituted, and without any difference of opinion

or any dissent from any member, the said proceedings were held legal. I have no doubt of the correctness of that holding, and so far as I am concerned adhere to it and reaffirm it.

Said statement by her to Isom Vickery and his wife, as they swore, was, at most, but a shorthand rendering of the facts, which heretofore has always been held admissible. 1 Branch's Ann. P. C., sec. 132; Miller v. State, 18 Texas Crim. App., 232; Powers v. State, 23 Texas Crim. App., 42; Fulcher v. State, 28 Texas Crim. App., 465; Meyers v. State, 37 Texas Crim. Rep., 208; Williams v. State, 60 Texas Crim. Rep., 453.

Again, this court has heretofore held that a dying statement by a deceased, such as that he was "killed for nothing" or "shot without cause," and other like statements, was a shorthand rendering of the facts and not a mere opinion, and admissible. Roberts v. State, 5 Texas Crim. App., 141; Pierson v. State, 21 Texas Crim. App., 14; Sims v. State, 36 Texas Crim. Rep., 154; Connell v. State, 46 Texas Crim. Rep., 259; Lockhart v. State, 53 Texas Crim. Rep., 589; Craft v. State, 57 Texas Crim. Rep., 257; Gaines v. State, 58 Texas Crim. Rep., 631; Corbitt v. State, 72 Texas Crim. Rep., 396, 163 S. W. Rep., 436; Clark v. State, 56 Texas Crim. Rep., 293.

If the statement is a shorthand rendering of the facts as shown by the statement, or the context, it has heretofore been held admissible though apparently an opinion. Sims v. State, supra; Connell v. State, supra; Lockhart v. State, supra; Craft v. State, supra; Gaines v. State, supra; Lane v. State, 59 Texas Crim. Rep., 595; 2 Branch's Ann. P. C., p. 1036.

I have more than once read and studied the testimony heard by the trial judge in the attack of appellant on the verdict of the jury. I am thoroughly convinced that the trial judge was fully justified in over-ruling the motion for new trial on that ground. I think a careful study of all of that testimony should convince anyone that the trial judge correctly overruled the motion on that ground. It is useless for me to detail that evidence. There may be culled, as has been done herein, some expressions in the testimony of some of the jurors which, if taken alone, might have justified the trial judge to have set aside the verdict on that ground, but that is not the criterion. All the testimony of all of the jurors should be considered; and when that is done, as was done by the trial judge in this case, I think his action was correct. And his action is supported by the former decisions of this court. I merely cite some of the cases without commenting upon them. Coffman v. State, 73 Texas Crim. Rep., 295; Morrison v. State, 39 Texas Crim. Rep., 519; Arnwine v. State, 54 Texas Crim. Rep., 213; Smith v. State, 52 Texas Crim. Rep., 344; Baines v. State, 43 Texas Crim. Rep., 490; Salazar v. State, 55 Texas Crim. Rep., 307; Lamb v. State, 75 Texas Crim. Rep., 75.

The judgment herein should be affirmed, not reversed. I respectfully dissent.