## P. C. WEAVER v. THE STATE.

No. 5118.   Decided March 26, 1919.

**1.—Murder—Charge of Court—Self-Defense—Manslaughter.**

Where, upon trial of murder inflicting the death penalty, the court properly charged on manslaughter and self-defense, there was no reversible error on that ground.

**2.—Same—Misconduct of Jury—Evidence Outside of the Record.**

Where, upon trial of murder inflicting the death penalty, it appeared from the record on appeal that the jury received in their retirement evidence not developed upon the trial, and that these new facts were used against the defendant and were instrumental in bringing about the verdict of the jury in favor of the extreme penalty, the judgment must be reversed and the cause remanded.   Following McDougal v. State, 81 Texas Crim. Rep., 179, 194 S. W. Rep., 944, and other cases.

**3.—Same—Rule Stated—Misconduct of the Jury—Outside Evidence.**

If the jury receives other testimony after having retired to deliberate upon the case, a new trial is mandatory where the testimony is of a material character, and it makes no difference whether the jury received the testimony from one of their number or from others.   Following Mitchell v. State, ·36 Texas Crim. Rep., 278, and other cases.

Appeal from the Criminal District Court of Travis.   Tried below before the Hon. James R. Hamilton, judge.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*Dickens & Dickens,* for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.—

MORROW, JUDGE.—This appeal is from a conviction for murder with the death penalty assessed.

The tragedy took place near one of the public schools at which appellant was working as janitor. He shot and killed the deceased. According to the State's theory, the homicide was on malice engendered by the efforts of deceased to collect an account from the appellant. It was appellant's theory that he had been, informed by his wife that the deceased had insulted and assaulted her, and that when appellant on first meeting, charged the deceased with this conduct it was not denied, but the deceased used threatening words and gestures, which produced in appellant's mind a fear of losing his life. The wife of appellant testified to the criminal assault by the deceased and her communication of the fact to the appellant.

The issues of manslaughter and self-defense were raised by the evidence, and submitted by the court. Bills of execution were reserved to matters of procedure upon the trial, but after careful examination of them we are of opinion that they disclose no reversible error.

The jury retired to consider their verdict about noon on the 13th day of the month, and returned their verdict about 9 o'clock on the following morning. It appeared on hearing of the motion for a new trial that after the jury had taken several ballots they agreed that appellant was guilty of murder, but disagreed on the character of punishment. Appellant contends that when this difference of opinion developed, the members of the jury were guilty of misconduct which vitiated the verdict, in that they received in their retirement evidence not developed upon the trial, and that these new facts were used against the appellant, and were instrumental in bringing about the decision of the jury in favor of the extreme penalty. It appears that the foreman and other members of the jury made statements in the presence of the jury bringing to their attention several instances occuring in Travis county in which, after conviction of persons accused of crime and sentenced to the penitentiary, as claimed by the jurors the Governor had wrongfully interfered and used the pardoning power to shorten the terms of service of those condemned. In this discussion the murder of a Mr. Hornsby by Mexicans was disclosed; also the murder of Eugene Smith, and a homicide committed by one Miller. These homicides were not known to some of the members of the jury, and they were in ignorance of the subsequent history of the trials of those charged with them. These were repeatedly referred to by the foreman and other members of the jury, and the jurors told that if they failed to assess the death penalty against the appellant that the Governor would be guilty of misconduct like that in the cases mentioned and release him from the penitentiary, and that for that reason the death penalty

should be assessed. Some of the jurors were Germans and possessed an imperfect knowledge of the English language. Other members of the jury did not understand the German language, and one of the German members of the jury, who was quite reluctant to consent to the death penalty, and the last to concur in it, was urged by one of his fellows using the German language to consent to the death penalty upon the ground mentioned. The jurors on their cross-examination declared that they were not influenced by these new facts, though some of them stated that they were considered by them.

Our statute provides that, "Where the jury, after having retired to deliberate upon the case, have received other testimony; or where on account of the misconduct of the jury the court is of the opinion that the defendant has not received a fair and impartial trial, a new trial shall be granted." Art. 837, C. C. P. It has often been held that a statement of facts within the personal knowledge of one of the jurors and which has not been developed upon the trial, is misconduct, and where the facts thus disclosed are material the law presumes that they injured the accused, and a new trial will be ordered unless the presumption of injury is rebutted by the evidence introduced on the motion for a new trial. 12 Cyc., 727; McDougal v. State, 81 Texas Crim. Rep., 179, 194 S. W. Rep., 944, and cases therein cited and the mere conclusion of the juror that he is not influenced is not sufficient rebuttal. In Lankster v. State, 43 Texas Crim. Rep., 298, it is said: "The affidavits of jurors who are guilty of misconduct to the effect that they were not prejudiced by what they did is of light weight. Such an affidavit is to be expected from jurors seeking to justify themselves for their own misconduct." On the subject Judge Hurt, in a leading case, said: "It would appear from this statute that if the jury received other testimony after having retired to deliberate upon the case, a new trial is mandatory. Certainty it would be so where the testimony is of a material character, and it makes no difference whether the jury received the testimony from one of their number, or from others." Mitchell v. State, 36 Texas Crim. Rep., 278.

Touching the materiality of the new facts adduced, and the alleged misconduct of the jury relating thereto, we are referred to Kannmacher v. State, 51 Texas Crim. Rep., 118, wherein it is held that proof that one of the jurors was not originally in favor of the death penalty but consented to it because the jurors thought that wholesale killings in the county should be stopped, and that the death penalty should be inflicted to effect that purpose, was of such material character as to require a reversal. In Crow's case, 47 Texas Crim. Rep., 225, a statement by one of the jurors that he knew the accused and did not like his morals, in connection with a discussion by the jury of evidence not introduced on the

8—85 T. C. R.

trial to the effect that there was a gang of criminals in. the community and that a purse had been made up to further their prosecution, was held so prejudicial as to require a reversal. In Hopkins case, 68 S. W. Rep., 986, the death penalty on plea of guilty of rape was reversed because of the reference by one of the jurors while in retirement that the accused had been previously tried for a similar offense and where the jury discussed without evidence the probability of consent. In the early case of Anschick v. State, 6 Texas Crim. Rep., 524, a reversal of a conviction for rape was ordered because one of the jurors in retirement stated, in the presence of his fellows, that he knew one of the witnesses for the accused and that she was unworthy of credit. And the same holding was made in McKissick v. State, 26 Texas Crim. App., 673, and in Lucas v. State, 27 Texas Crim. App., 322; and in Manson's case, 16 S. W. Rep., 766, a conviction of arson was reversed because of a discussion by the jury in their retirement of the burning in the same community of other buildings by unknown parties. In a recent case, Walker v. State, 206 S. W. Rep., 96, the remarks of the district attorney in his argument in which he instanced a case which he had prosecuted on facts similar to those in the case on trial in which the death penalty had been assessed were held reversible on the ground that it was stating to the jury a fact not admissible in evidence and not testified to under oath, which was prejudicial to the accused on trial.

It is contemplated by the statute that the evidence upon which a jury is authorized to render a verdict against one accused of crime is to be that alone which was introduced under the supervision of the presiding judge. Evidence coming to the jury otherwise is not only a transgression of the statutory law, but violative of the constitutional provision which declares that one accused of crime shall be confronted with the evidence against him. New evidence given in the jury room comes under circumstances denying the accused the opportunity to test its truth by cross-examination, or to controvert its accuracy by other testimony. In the instant case if upon the trial an offer had been made to prove that the incidents mentioned took place, the judge would doubtless have refused to admit it. Without his sanction, however, such evidence was given the jurors and used against appellant upon the vital question of life or death, and after its receipt, and upon its consideration, the jurors who had previously refused to consent to the death penalty concurred in its infliction. The facts developed upon the motion for a new trial indicate that the verdict assessing the death penalty does not reflect the deliberate judgment of the members of the jury upon the evidence against appellant legally before them, but that some of them were induced to agree to it because a similar punishment had not been inflicted in other cases of which they knew nothing, except such

things as were told them during their retirement, and because in such cases the Governor had, in the opinion of the jurors relating the extraneous facts, been over-lenient in the exercise of the pardoning power.

The facts adduced on the hearing of the motion confirm rather than repel the presumption of prejudice which the law indulges when it is shown that new and material facts have entered into the verdict, and we think there was error in refusing to grant a new trial, to correct which we deem it our duty to order a reversal of the judgment.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*